UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BEVERLY AHNERT, Individually and as Executrix
of the Estate of Daniel Ahnert, Deceased

      Plaintiffs,

v.

EMPLOYERS INSURANCE COMPANY
OF WAUSAU, SPRINKMANN SONS CORPORATION,
WISCONSIN ELECTRIC POWER COMPANY,
and PABST BREWING COMPANY,

      Defendants.

Case No. 10-cv-156-pp
Case No. 13-cv-1456-pp

---

**MEMORANDUM OF LAW SUPPORTING THE COURT'S DENIAL OF EMPLOYERS INSURANCE COMPANY OF WAUSAU'S AND SPRINKMANN SONS CORPORATION'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 55)**

---

## I. BACKGROUND

Plaintiffs Daniel and Beverly Ahnert filed this asbestosis case on February 25, 201. Dkt. No. 1. The complaint alleged that Daniel Ahnert had been exposed to asbestos, which had caused his medical condition. On May 4, 2010, the United States Judicial Panel on Multidistrict Litigation transferred the case to the federal court for the Eastern District of Pennsylvania, where Judge Eduardo C. Robreno was presiding over multidistrict litigation ("MDL") involving thousands of asbestosis cases. Dkt. No. 28.

Some two and a half years later, Beverly Ahnert—individually, and as the executrix of the estate of Daniel Ahnert (who since had passed away)—filed a

1

new case in the Eastern District of Wisconsin. The complaint in <u>Ahnert v. Employers Ins. Co. of Wausau</u>, *et al.*, Case No. 13-cv-1456-cnc (E.D. Wis.) ("the 2013 case") alleged that on July 7, 2011, Daniel Ahnert had passed away as a result of asbestos-related diseases. This case was assigned to Judge Charles N. Clevert; it was not transferred to an MDL court.

On September 8, 2014—while the 2013 case was pending before Judge Clevert—the MDL court remanded this case back to the Eastern District of Wisconsin. Dkt. No. 34. In his order suggesting remand, Judge Robreno stated that he had denied the summary judgment motions filed by defendants Pabst Brewing Company and Wisconsin Electric Power Company; he had granted in part and denied in part defendant Sprinkmann Sons, Corporation's motion for summary judgment. Dkt. No. 34-1 at 6-7. Judge Robreno found that the case was ready for trial (subject to any trial-related motions *in limine* and <u>Daubert</u> motions). Dkt. No. 34-1 at 7. He severed "[a]ny demand for punitive damages," and the MDL court retained "claims for punitive or exemplary damages." <u>Id.</u> In a footnote, Judge Robreno noted that he was severing the issue of punitive damages with regard to all of the cases in the MDL proceeding. <u>Id.</u> at 8, n.1.

A few months later, Beverly Ahnert moved to consolidate this case with the 2013 case. Dkt. No. 35. This court deferred ruling on that motion until Judge Clevert could decide the outstanding motions for summary judgment in the 2013 case. Dkt. No. 44. The court also ordered that defendants Pabst and Sprinkmann could "update" their summary judgment motions (the ones on which Judge Robreno had ruled) on two discrete issues that Judge Robreno did

not address: the Wisconsin Construction Statute of Repose ("CSOR") and the Safe Place Act. Id.

Ignoring the court's instructions, defendants Sprinkmann Sons, Inc. and Employers Insurance Company of Wisconsin (dkt. no. 55) and Pabst (dkt. no. 58) filed *new* summary judgment motions (although Pabst captioned its motion as an amended motion). In addition, Wisconsin Electric—to whom the court *did not* give permission to update its motions—filed a motion for summary judgment. Dkt. No. 52. Sprinkmann and its insurer, Employers Insurance Company,[1] argued not only that the CSOR barred the plaintiffs' claims, but also argued that the plaintiffs could not prove causation and that they were not entitled to punitive damages. Dkt. Nos. 55 and 58. At a hearing on September 3, 2015, the court explained that it would not hear argument on punitive damages because the MDL court had "clearly and specifically reserved" that issue—in this and all the other MDL asbestosis cases—to itself, and because Judge Robreno also had resolved the causation issue. Dkt. No. 80.

At the same hearing, counsel for Sprinkmann raised the issue of a footnote in plaintiffs' brief filed in the 2013 case. Counsel argued that in that footnote, the plaintiffs had conceded that there was no evidence that Daniel Ahnert had been exposed to asbestos at the Oak Creek Power Plant during the 1989 job. Id. at 1. It followed, Sprinkmann argued, that the plaintiffs did not have a case against Sprinkmann. Id. Counsel for the plaintiffs said he was not

---

[1] For the remainder of this order, the court will refer to Sprinkmann Sons and Employers Insurance simply as "Sprinkmanns."

prepared to respond to that argument, so the court gave him time to file a document explaining the footnote and its impact on this case. Dkt. No. 80 at 2.

On January 6, 2016, Judge Clevert denied and Sprinkmann's motion for summary judgment in the 2013 case. <u>Ahnert v. Employers Insurance of Wausau</u>, Case No. 13-cv-1456-cnc at Dkt. No. 199. The next day, he denied Pabst's motion for summary judgment. <u>Id.</u> at Dkt. No. 200. A couple of weeks later, he denied Wisconsin Electronic Power Company's motion for summary judgment. <u>Id.</u> at Dkt. No. 201. The plaintiffs then filed another motion in this court, asking the court to consolidate the two cases. Dkt. No. 89.

On March 31, 2017,[2] this court denied the defendants' pending summary judgment motions, and granted the plaintiffs' second motion to consolidate the two cases. Dkt. No. 101.

---

[2] There was a delay between the date on which Judge Clevert decided the summary judgment motions in the 2013 case and the date this court ruled on the motion to consolidate/motions for summary judgment in this case. There are a number of reasons for that delay, many of which have to do with congestion on the court's calendar. The court notes, however, that Civil Local Rule 56(b)(2)(B)(i) of the Eastern District of Wisconsin requires a party opposing summary judgment to file a statement of facts, containing a "reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits declarations, parts of the record, and other supporting materials relied upon." It also requires that party to file a statement of any additional facts that require the denial of summary judgment, with citations to the record.

In responding to the defendants' summary judgment motion, the plaintiffs construed this court's order as requiring *them* to supplement the briefs *they* had filed in the Pennsylvania MDL. Despite the fact that the plaintiffs were filing their response briefs in the Eastern District of Wisconsin, they followed the "briefing format used in submitting the original MDL briefs to the Eastern District of Pennsylvania." Dkt. No. 63 at 2, fn. 3. The plaintiffs did not comply with the local rules of the Eastern District of Wisconsin, including the one quoted above. Without the responses to the proposed findings of fact,

The court will not address the defendants' arguments on the issues of causation and punitive damages, because Judge Robreno decided the issue of causation and retained for decision by the MDL court all punitive damages issues. The court finds that genuine issues of material fact preclude summary judgment on the issue of whether Wisconsin's CSOR bars the plaintiffs' claims, and will deny the defendants' motion for summary judgment on that issue. The court concedes that the plaintiffs' alleged concession in the footnote in the 2013 case illustrates the kinds of issues created when parties pursue parallel litigation in multiple forums. It will not, however, dismiss the plaintiffs' case against Sprinkmann based on a footnote from a brief in another case.

## II. SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 governs motions for summary judgment. It allows a party to "move for summary judgment, identifying each claim or defense . . . on which" the party seeks summary judgment. Fed. R. Civ. P. 56(a). If the moving party can show "that there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law," the "court shall grant summary judgment," stating its reasons on the record. Id.

To prove that there are no genuine, factual disputes, the moving party must support the motion with "particular parts . . . in the record," such as "depositions, documents . . . affidavits or declarations, stipulations," etc. Fed.

---

the court was forced to scour the record to identify disputed issues of fact. Ritchie v. Glidden Co., 242 F.3d 713, 723 (7th Cir. 2001) (court is not required to scour the record or permitted to conduct a paper trial on the merits of the claim.) This contributed in some part to the delay in the court issuing its decisions.

5

R. Civ. P. 56(c)(1)(A). The moving party may show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The court, however, "may consider other materials in the record," and not just those cited by the parties. Fed. R. Civ. P. 56(c)(3). The "ultimate burden of persuasion remains with the moving party to show that [he] is entitled to judgment as a matter of law." Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006).

## III. FINDINGS OF FACT

Beverly Ahnert, the widow of Daniel Ahnert, resides in White Settlement, Texas. Dkt. No. 1. After Daniel Ahnert passed away on July 7, 2011, Beverly Ahnert was appointed the executrix of his estate. Dkt. No. 56-8. She alleges that defendant Sprinkmann sold, installed, and removed asbestos products and manufactured asbestos-containing products. Dkt.1 (Defendant Employers insures Sprinkmann. Dkt No. 1 at ¶6.)

Daniel Ahnert was a pipefitter or steamfitter starting in 1955, and worked out of the Milwaukee Union Local 601. Dkt. 56-1, Exs. A and B. From approximately 1955 to 1980, Daniel Ahnert was exposed to and inhaled airborne asbestos fibers released while using or working in proximity to others who were using or removing such products. Dkt. 1 at ¶25. In the complaint, Beverly Ahnert alleges that Daniel Ahnert suffered from non-malignant asbestos conditions, including (without limitation) asbestosis. Dkt. 1 at ¶27. Dr. Stephen Haber determined that Ahnert had developed asbestos-related

6

pleural disease from his occupational exposure to asbestos. Dr. Haber also determined, based on Ahnert's work history, that his cumulative asbestos exposure contributed to his disease. Case No. 10-cv-67443 (E.D. Pa.), Dkt. No. 395-2 at 6.

Jon Shorougian, a member of Steamfitters Local 601 out of Milwaukee, Wisconsin, testified that Ahnert was his partner while working "in the . . . early to mid '80s at the Oak Creek Power plant." Dkt. No. 63-5 at 6. The work lasted six months, and involved overtime hours—shifts longer than eight hours. Id. at 20. Shorougian and Ahnert were present for the tear down of the old boiler on Unit 5, and were assigned the task of "replacing" portions of the boiler. Id. at 7, 8. The boiler was "100 feet high" and about "50 x 50" feet wide. Id.

According to Shorougian, he and Ahnert were "replacing some of the old coal-fired pieces with natural gas-fired pieces, which involved a lot of cutting, grinding, [and] welding." Id. at 7. Coal was the main process of burning fuel even after the additional of gas nozzles to the burner deck. Id. at 14. The process involved tearing off casing to reveal insulation that went from the floor up to the burner deck, twenty-five to thirty feet up. Id. at 8, 10, 11. Behind the boiler jacket was a fibrous insulation material, both hard and soft. Id. at 9. The brick insulation underneath the boiler was soft and crumbly. Id. at 10.

The insulation removal was done in part by Sprinkmann and in part by Ahnert and his coworkers. Id. at 11. Shorougian testified that someone from Wisconsin Electric initially told him and Ahnert that the insulation was not asbestos, so they continued to strip the boiler down to the fibrous material like

7

insulation. Id. at 9. As the facility became "really dusty," the workers began to worry, and they "took a sample and gave it to one of [the] union representatives and asked him to have it tested ... and found out it was positive." Id. at 12. Both Shorougian and Ahnert still were on the job when the results came back. Id. at 50.

Shorougian and Ahnert breathed the dust for the entire six months in the 1980s that they worked at the Oak Creek facility, and the dust remained in the air and stuck to some of the metal in the area where Shorougian and Ahnert worked. Id. at 6, 19. They did not have respirators on the job; they had "little paper masks that went over your face." Id. at 43-44. They did not feel it was necessary to use the paper masks because they were told the insulation was not asbestos. Id. at 50.

Shorougian recalled that Sprinkmann was the insulating contractor on the site, and that Sprinkmann personnel were present every day of the job. Id. at 11, 16. He remembered their distinctive logo—an "S" with piping—on their uniforms, and he remembered that their trailers had "a great big name of Sprinkmann on them." Id. at 36.

The plaintiffs produced in the Eastern District of Pennsylvania an unauthenticated document dated April 27, 1989, that states that members of Local 601 were working on the job, piping coal and air lines to burners, when they confirmed that the primary air lines contained 15% chrysotile amosite asbestos. Dkt. No. 56-5. Michael Dowling, the comptroller of Sprinkmann since 1984, averred that he had personal knowledge that Sprinkmann did not

8

remove asbestos-containing insulation as part of its business in 1989, and that Wisconsin Electric did not hire Sprinkmann to remove any asbestos-containing insulation at any Wisconsin Electric facility in 1988 or 1989. Dkt. No. 56-7 at ¶¶ 5, 6. According to Dowling, any insulation removed at the Oak Creek Power Plant in 1988 or 1989 was asbestos-free "per the owner of the facility." Id. at ¶ 7.

On the other hand, there is evidence in the record that Sprinkmann provided for and installed the original asbestos-containing insulation on Unit 5 under its contract with Wisconsin Electric. Case No. 10-cv-67443 (E.D. Pa.), Dkt. No. 395-10 at WE 52138. Sprinkmann's contract specifically called for the use of insulating materials "containing not less than 10% long asbestos fibers," and calcium silicate type materials made with "long asbestos fibers." Id.

## IV. CONCLUSIONS OF LAW

### A. Wisconsin Construction Statute of Repose

Wisconsin's Statute of Repose, Wis. Stat. §893.89, limits the time in which a plaintiff may bring an action for injury resulting from improvements to real property. The purpose of the CSOR is to "provide protection from long-term liability for those involved in the improvement to real property." Kohn v. Darlington Cmty. Schs., 283 Wis. 2d 1, 39, 698 N.W.2d 794 (2015). The exposure period runs ten years from the date immediately following the substantial completion of the improvement. Wis. Stat. §893.89(1). The Wisconsin legislature limited such causes of actions by stating that:

> no cause of action may accrue and no action may be commenced . . . against the owner or occupier of the property or against any

person involved in the improvement to real property after the end of the exposure period, to recover damages . . . for any injury to the person, or for wrongful death, arising out of . . . the improvement to real property. This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.

Wis. Stat. §893.89(2). The statute does not apply in four situations:

> (a) A person who commits fraud, concealment or misrepresentation related to a deficiency or defect in the improvement to real property.
>
> (b) A person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guarantee.
>
> (c) An owner or occupier of real property for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property.
>
> (d) Damages that were sustained before April 29, 1994.

Wis. Stat. §893.89(4)(a)-(d). Finally, the statute "applies to improvements to real property substantially completed before, on or after April 29, 1994." Wis. Stat. §893.89(5).

Sprinkmann argues that the CSOR bars the plaintiffs' claims, because (a) Sprinkmann was involved in the improvement to real property, (b) the claims relate to the alleged negligence of Sprinkmann in the furnishing, installation, and removal of insulation during the Unit 5 improvement to property, and (c) the plaintiffs brought the claim outside the exposure period. Dkt. No. 56 at 10. According to Sprinkmann, none of the exceptions to the CSOR apply.

The primary issue is what constitutes an improvement. The Wisconsin Supreme Court has defined an improvement as a "permanent addition to or

10

betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable." Kohn, 283 Wis. 2d at 16 (citing Kallas Millwork v. Square D Co., 66 Wis. 2d 382, 386, 225 N.W.2d 454 (1975)). In contrast, maintenance is "the 'work of keeping something in proper condition; upkeep.'" Hocking v. City of Dodgeville, 326 Wis. 2d 155, 177, 785 N.W.2d 398 (2010). "This distinction is reasonable because improvements to real property have a completion date whereas regular repairs and maintenance can continue *ad infinitum.*" Peter v. Sprinkmann Sons Corp., 360 Wis. 2d 411, 427 860 N.W.2d 308 (Ct. App. 2015).

To prevail on the motion for summary judgment, then, Sprinkmann had the burden of establishing that its work was an improvement, as defined by case law. Sprinkmann maintains that the work it did on Unit 5 at the Oak Creek Plant—supplying, removing and installing installation—was a permanent addition that enhanced the capital value of the property. The building already had insulation in it. A fact-finder could determine that removing old insulation (particularly if it is dangerous, or even ineffective) and replacing it with new, safe, effective insulation is simply maintenance—part of keeping the building's insulation in proper condition. The fact-finder could determine that replacing old insulation is the kind of work that can continue *ad infinitum*—it will need to be done again and again. On the other hand, a fact-finder could determine that putting in new insulation—especially if it is some kind of special, non-degradable insulation—is a permanent betterment of the property that

increases its value. The fact-finder's determination would turn on evidence that Sprinkmann has not provided—the kind of installation they installed, how long it might last, the scope of the project, the cost of the new insulation, the amount of value (if any) that the new installation added to the premises. Sprinkmann can present that evidence to a jury, and the jury can evaluate it (and all other evidence) and make a determination as to whether Sprinkmann's work was more in the nature of an improvement or more in the nature of maintenance.

Sprinkmann also appears to argue that any party who supplies or installs insulation is entitled to invoke the CSOR, citing Stanley v. Ameren Illinois, 982 F. Supp. 2d 844 (N.D. Ill. Oct. 22, 2013). The Stanley court ruled that, under the *Illinois* Statute of Repose, installation of insulation constituted an improvement, "[b]ecause the thermal insulation is incorporated into and becomes part of the plant, allowing it [to] function[] properly and operate efficiently and safely, it is inseparate from the improvement of real property." Id. at 864. The court in Stanley reviewed evidence regarding, and considered, four factors articulated by the Illinois Supreme Court: whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced. Id. at 861 (citing St. Louis v. Rockwell Graphic Systems, Inc., 605 N.E. 2d 555 (Ill. 1992)). The court considered the submissions of the parties' experts and evidence

regarding the intended purpose of the thermal insulation in the project. In contrast, Sprinkmann has presented no such evidence in this case.

Sprinkmann attempts to distinguish the Wisconsin Court of Appeals' decision in Peter v. Sprinkmann, where that court refused to bar the plaintiffs' claims under the CSOR. 360 Wis. 2d at 428. In Peter, the plaintiff argued that Sprinkmann's work at the Pabst Brewing Company was routine maintenance and repair to the insulation on machine pipes; Sprinkmann countered that its work installing insulation was an improvement to real property. Id. The record in that case established that Sprinkmann had an employee on site on a daily basis during regular, daily repairs to the insulation. Id. at 418. The Wisconsin Court of Appeals acknowledged that an initial installation might be considered an improvement, but concluded that regular maintenance and repair work to the insulation around the pipes did not fall within the CSOR. Id. at 428. The Peter decision, rather than being distinguishable, illustrates the question raised in this case—the question of where, on the spectrum between obvious improvement (building a new wing to the plant, for example) and obvious maintenance (changing air filters every two months, for example) the installation of insulation falls. The answer to that question is dependent on specific facts that Sprinkmann has not provided.

Sprinkmann also asserts that the plaintiffs misinterpret Sorenson v. Building Services Industrial Sales, In., 362 Wis. 2d 539, 865 N.W.2d 885, 2015 WL 1893444 (Ct. App. April 28, 2015). In Sorensen, the Wisconsin Court of Appeals reversed the circuit court's grant of summary judgment because

contradictory evidence in the record established a genuine issue of material fact. The defendant in Sorenson had cited evidence that the work involved large permanent structures or was new construction work. Id. at *3. Plaintiff Sorenson responded with his deposition testimony, in which he recalled doing "little jobs" such as "running some insulation on some pipes going up alongside of a boiler" at the Oak Creek Power Plant. Id. In this case, it is not only the presence of contradictory evidence which raises a question of material fact, but also the absence of the kind of evidence the defendant provided in Sorenson.

Because the court concludes that the defendants have not met their burden of establishing that the CSOR bars the plaintiffs' claims as a matter of law, and because, construed in the light most favorable to the plaintiffs, the evidence reveals genuine issues of material fact, the court need not address the defendants' remaining arguments.[3]

B.     Footnote in the Plaintiffs' Brief in the 2013 Case

The only remaining issue is the footnote that the plaintiffs included in a brief filed in response to Sprinkmann's motion for summary judgment in Case No. 13-1456 before Judge Clevert. On June 26, 2015, the plaintiffs stated in a footnote: "Plaintiff does not dispute Sprinkmann's claims of no evidence of exposure at the Milwaukee Public Schools job and the 1989 partial burner replacement job at Oak Creek." Case No. 13-cv-1456, Dkt. No. 145 at 17, fn. 3.

---

[3] The court does note that, with regard to the plaintiffs' argument that the CSOR is unconstitutional, the Wisconsin Supreme Court has held that "statutes of repose do not violate the right to remedy provision of Article I, Section 9 because any right of recovery is extinguished at the end of the repose period and the right for which the litigant seeks a remedy no longer exists." Kohn, 2005 WI 99, ¶38.

In this case, counsel for Sprinkmann has argued that that concession requires the court to conclude that the plaintiffs have no case against Sprinkmann. Dkt. No. 80 at 1. The court disagrees.

On November 9, 2015, Judge Clevert held oral arguments on the motions for summary judgment in the 2013 case. Case No. 13-CV-1456-cnc, Dkt. No. 196. At that hearing, Judge Clevert "ask[ed] the plaintiff to set forth with particularity the date, time and place where the plaintiff asserted that each defendant acted or was responsible for plaintiff's exposure to asbestos products." Id. at 3. With regard to Sprinkmann, the plaintiff responded, "Judge Robeno [sic] ruled on the . . . boiler replacement in 1989 at Unit 5 (Oak Creek) where Sprinkmann was also present. The rest of the evidence is new evidence … [which] includes the . . . 1968-1969 turbine outage at Oak Creek. Sprinkmann was the insulation contractor . . . ." Id. at 4. Counsel for Sprinkmann did not respond or object to these statements.

The plaintiffs have explained why the footnote in the 2013 case exists and why it seems to contradict the arguments made in this case. Dkt. No. 81. First, the plaintiffs argue that for this court to find that the plaintiffs have no case against Sprinkmann would disturb Judge Robreno's finding that the issue of causation should go to the jury. This court agrees. The plaintiffs' statement in the 2013 case footnote that it did not dispute Sprinkmann's statement that there was "no evidence of exposure" at the 1989 Oak Creek site is directly related to causation—the issue that Judge Robreno already has decided. Judge Robreno ruled that the causation question in this case must go to the jury, and

15

thus is the law of the case. It was for just that reason that the court limited the parties to two, discrete issues in their supplemental filings: the CSOR and the Wisconsin Safe Place Statute. To conclude that the footnote in the 2013 case bars the plaintiffs' claims in this case would reopen the causation issue. That would undermine Judge Robreno's ruling, and would undermine this court's own ruling that it would not allow the parties to re-litigate causation at the summary judgment stage.

Judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)). The doctrine "prevent[s] improper use of judicial machinery" and "is an equitable doctrine invoked by a court at its discretion." Id., 532 U.S. at 750 (internal quotation marks and citations omitted). No "general formulation of principle" exists to determine when a court may apply the doctrine, but courts often consider three factors. Id. (citations omitted). Courts look for a clearly inconsistent position, whether acceptance of the later position would result in a "perception" that "either the first or the second court was misled," and whether there is a "risk of inconsistent court determinations." Id. at 750-51 (internal citations omitted).

Here, neither party has shown evidence of an attempt to mislead the court. Nor does this court's refusal to bar the plaintiffs' claims based on the footnote present a risk of inconsistent court determinations. Judge Clevert did

16

not grant summary judgment in favor of Sprinkmann on this issue. His January 6, 2016, order denied Sprinkmann's motion for summary judgment in without explicitly referencing the footnote, and without explicitly granting judgment in favor of Sprinkmann for claims arising from the 1989 Oak Creek job. See Ahnert, Case No. 13-cv-1456-cnc, Dkt. No. 199. By declining to apply the footnote here, this court makes a ruling consistent with Judge Clevert's ruling denying the motion for summary judgment in the 2013 case.

Second, the plaintiffs point to the different procedural postures of the two cases. This case went to the MDL court; the 2013 case did not. While this case was in the MDL court, Judge Robreno decided that the "plaintiff ha[d] identified sufficient evidence to support a finding of causation with respect to asbestos exposure from pipe insulation supplied by [Sprinkmann]." Id. at 2. As a result, the MDL court denied Sprinkmann's motion for summary judgment, and found that the issue of causation must go to the jury. "Judge Robreno found evidence of causation against Sprinkmann based [specifically] on the partial burner replacement job at Oak Creek in the 1980s." Id.

While this case was pending before Judge Robreno, the 2013 case went forward before Judge Clevert. That case involved "new" evidence that the parties had "developed during discovery." Id. at 4. That evidence included the deposition testimony of Charles Lewitzke, Robert Wolter and Jack Wetzel and, according to the plaintiffs, meant that the plaintiffs did not have to focus on the 1989 Oak Creek job. Id. Instead, in the 2013 case, the plaintiffs "reduce[d] the issues" to the turbine outages and exposure at other facilities. Id. Because

of the different evidence in the 2013 case, the plaintiffs adopted certain litigation strategies that they have not adopted in this case.

Sprinkmann responds that the underlying facts for both cases, and specifically those relating to "the alleged 1989 Oak Creek exposure," are identical. Dkt. No. 83 at 2. They assert that the plaintiffs have waived and abandoned "the 1989 exposure" and have "express[ly] acknowledg[ed] that the facts … are insufficient to present to a jury." Id. at 3. Sprinkmann concludes, "[s]ummary judgment as to the alleged exposure from the 1989 Oak Creek project in the 2013 matter equally prohibits that exposure claim from proceeding in this matter." Id. at 5. Again, this misstates Judge Clevert's ruling. Judge Clevert did not rely on the footnote in his decision, nor did he explicitly grant summary judgment to Sprinkmann regarding claims surrounding the 1989 Oak Creek job.

Finally, the plaintiffs argue that Sprinkmann has cited no case law for the proposition that the plaintiffs were required to refute Sprinkmann's arguments about the 1989 turbine replacement in the *2013 case* in order to be able to preserve their arguments in *this case*. The court agrees.

The court will not apply the footnote from the 2013 case to this case.

## V. CONCLUSION

For these reasons, on March 31, 2017, the court denied the summary judgment motion filed by Sprinkmann Sons, Inc. and Employers Insurance of Wausau. The court will confer with the parties at the May 15, 2017 status

18

conference as to the estimated length of trial, and possible final pretrial conference and trial dates.

Dated in Milwaukee, Wisconsin, this 11th day of May, 2017.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge