## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | | |
|---|---|---|---|
| **BEVERLY AHNERT, Individually and** | ) | | |
| **as Executrix of the Estate of** | ) | | |
| **DANIEL AHNERT, Deceased,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | **Case Nos.** | **10-cv-156-pp** |
| **v.** | ) | | **13-cv-1456-pp** |
| | ) | | |
| **BRAND INSULATIONS INC.,** *et. al.*, | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

## DEFENDANT PABST BREWING COMPANY'S
## MOTION TO BAR THE OPINIONS AND TESTIMONY OF HENRY ANDERSON, M.D., ARNOLD BRODY, Ph.D. AND BRENT STAGGS, M.D. PURSUANT TO *DAUBERT*

Comes now Defendant PABST BREWING COMPANY ("Pabst"), by and through its attorneys, HeplerBroom LLC, and moves this Court for an Order barring the causation opinions and testimony of Plaintiff's experts Henry Anderson, M.D., Arnold Brody, Ph.D. and Brent Staggs, M.D. pursuant to Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Respectfully submitted,

BY:    <u>/s/ *Joshua C. Schumacher*_____</u>
         Edna L. McLain
         Joshua C. Schumacher
         HEPLERBROOM LLC
         Attorneys for Pabst Brewing Company
         30 N. LaSalle Street
         Suite 2900
         Chicago, Illinois 60602
         Telephone: (312) 230-9100
         Facsimile: (312) 230-9201

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | | | |
|---|---|---|---|
| **BEVERLY AHNERT, Individually and** | ) | | |
| **as Executrix of the Estate of** | ) | | |
| **DANIEL AHNERT, Deceased,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | **Case Nos.** | **10-cv-156-pp** |
| **v.** | ) | | **13-cv-1456-pp** |
| | ) | | |
| **BRAND INSULATIONS INC.,** *et. al.,* | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

## DEFENDANT PABST BREWING COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO BAR THE OPINIONS
## AND TESTIMONY OF HENRY ANDERSON, M.D., ARNOLD BRODY, Ph.D. AND
## BRENT STAGGS, M.D. PURSUANT TO *DAUBERT*

Defendant PABST BREWING COMPANY ("Pabst"), by and through its attorneys, HeplerBroom LLC, submits the following Memorandum of Law in support of its Motion to Bar the Opinions and Testimony of Henry Anderson, M.D., Arnold Brody, Ph.D. and Brent Staggs, M.D. as inadmissible pursuant to Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## <u>INTRODUCTION</u>

This is a consolidated personal injury and wrongful death case wherein Plaintiff Beverly Ahnert alleges Pabst and other defendants exposed Daniel Ahnert to asbestos-containing products that led to his development of asbestosis and mesothelioma, leading to his subsequent death. Plaintiff filed the original asbestosis case on February 25, 2010, which was subsequently transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of Pennsylvania

for coordinated or consolidated pretrial proceedings.  Dkt. No. 3.  A few years later, Beverly Ahnert, individually and as the Executrix of Daniel Ahnert's estate, filed a second complaint in the Eastern District of Wisconsin. On August 21, 2014, the asbestosis case (Case No.10-cv-156) was remanded from the U.S. District Court for the Eastern District of Pennsylvania, and the case was subsequently assigned to Judge Pepper on December 29, 2014.  The two cases were recently consolidated on March 31, 2017.  Dkt. No. 101.

Pabst raises *Daubert* challenges as to the causation opinions of Drs. Anderson, Brody and Staggs, since the opinions espoused by each lack reliability on various scientific issues for which the Plaintiff seeks to produce them.  Those opinions are therefor inadmissible as they fail to meet the standards set forth by Federal Rule of Evidence 702.

<u>**ARGUMENT**</u>

## I.     <u>The *Daubert* Standard</u>

The United States Supreme Court has made it clear that scientific testimony is admissible under Rule 702 only if it is based upon "scientific knowledge" that is "derived by the scientific method":

> Proposed testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known.  In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).  In determining whether such proposed testimony was supported by "good grounds," the Court discussed five factors in the context of expert scientific evidence:

> 1.     Whether the expert's theory can be or has been tested or challenged in some objective sense or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;

2

2.      Whether the theory has been subject to peer review and publication;

3.      The known or potential rate of error of the theory when applied;

4.      The existence and maintenance of standards and controls; and

5.      Whether the theory has been generally accepted in the scientific community.

The *Daubert* Court held that expert testimony, on the issue of whether the drug Bendectin caused birth defects, was inadmissible because it was not sufficiently based on epidemiological evidence. In so doing, the Court recognized that the proponent of the testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n. 10. On remand from the Supreme Court, the Ninth Circuit in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995), further confirmed the need for evaluating the foundation of an expert's testimony. The Court explained that testimony of an expert's qualification, conclusions and assurances of reliability is not enough to satisfy the threshold of reliability. When scrutinizing scientific knowledge, the court cautioned, "the expert's bald assurance of validity is not enough." *Id.*, at 1316.

> Yet something doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that these conclusions were 'derived by the scientific method' be deemed conclusive ...
>
> * * *
>
> Our task, then, is to analyze not what the experts say, but what basis they have for saying it.

*Daubert*, 43 F.3d at 1315-16. "Similarly, Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014).

3

Here, as the proponents of Dr. Anderson's, Dr. Brody's and Dr. Staggs' testimony, Plaintiff bears the burden of establishing such admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 requires that an expert witness be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify as to his opinion if "(1) the testimony is based upon sufficient facts or data (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Fed. R. Evid.* 702.

Thus, in considering expert testimony, the trial court must consider "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017). Courts throughout the country have recognized that this heightened scrutiny of expert testimony is appropriate and necessary because expert testimony can be "both powerful and quite misleading because of the difficulty in evaluating it." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999). *See also Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (Expert witnesses have the potential to "be both powerful and quite misleading."). Thus, District Courts operate a vital "gatekeeping" role in ensuring that only helpful, legitimate expert testimony reaches the jury." *Brown*, 765 F.3d at 772, *citing Daubert*, 509 U.S. at 597. As the Supreme Court noted, expert testimony must "connote more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

## II.    The Inadmissible Opinions and Testimony of Drs. Anderson, Brody and Staggs are Not Based Upon Sufficient Facts or Data.

Rule 702 expressly requires that expert testimony be "based upon sufficient facts or data." Fed. R. Evid. 702. Experts must reach their conclusions through the use of sufficient data and

4

"talking off the cuff is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

Dr. Anderson's, Dr. Brody's and Dr. Staggs' opinions in this case are generic in nature, and not specific to Pabst. Dkt Nos. 67, 68 and 73. In fact, Dr. Anderson's and Dr. Brody's reports are devoid of any mention of Pabst. Dkt. Nos 67 and 68. Dr. Staggs' report mentions Pabst merely as an alleged location where Plaintiff's Decedent may have worked. Dkt. No. 73. Further, both Dr. Anderson and Dr. Staggs testified that they had no information or knowledge specific to Pabst, no information or knowledge regarding the alleged dose of asbestos exposure from any products allegedly encountered on Pabst's premises to which the Decedent was allegedly exposed, and had no opinion regarding how much exposure would be necessary to incrementally increase the Decedent's risk of developing an asbestos-related disease.[1] *See* Deposition of Henry Anderson, M.D., attached hereto and marked as Exhibit 1. *See* Deposition of Brent Staggs, M.D., attached hereto and marked as Exhibit 2.[2]

As Plaintiff's expert Dr. Brody readily notes, "all ... asbestos-induced diseases ... [are] dose dependent." Dkt. No. 68. Yet, despite this unassailable principle, all of Plaintiff's expert causation opinions ignore the well-accepted principles of dose. Neither Dr. Anderson, Dr. Brody, nor Dr. Staggs make any effort to assess the extent of the Decedent's alleged exposure to asbestos from any particular product or at any particular premises. Further, these same experts make no attempt to estimate Decedent's exposure dose, and make no effort to determine if the Decedent even had any exposure to asbestos from or at a Pabst facility. Accordingly, absent any analysis of exposure

---

[1] Dr. Anderson testified, in fact, that his only familiarity with Pabst's facility is as a tourist. *See* Exhibit 1 at p. 55-56.

[2] By agreement of the parties, Dr. Brody was not deposed in this matter. However, even a cursory review of Dr. Brody's report evidences that he too possesses no additional information above and beyond that which was tendered to Drs. Anderson and Staggs. Dkt. No. 68.

5

dose at or from Pabst, Dr. Anderson's, Dr. Brody's and Dr. Staggs' "cumulative exposure" theory cannot establish that exposure to asbestos at a Pabst facility, or any other exposure at any other facility or from any products, contributed, let alone substantially contributed, to cause the Decedent's illness and subsequent death.

In Dr. Anderson's report, he asserts that the Decedent's injury was caused by "combined occupational and bystander exposure to asbestos." Dkt. No. 67. In explaining his opinion, Dr. Anderson opined that "any exposures [Decedent] had in worksites where asbestos was in the air that he was breathing would have contributed again as part of his cumulative – accumulating overall dose." *See* Exhibit 1 at p. 47. Dr. Anderson testified that he could offer no opinion about any actual dose of asbestos the Decedent may have received at any point during his life, but could say only that whatever that dose was it was "sufficient" to cause disease. *Id.*, at p. 47-48. Essentially, Dr. Anderson's opinion is that any exposure greater than zero caused or contributed to the Decedent's illness. However, while Dr. Anderson gives a brief history of the medical literature concerning the overall progression of general asbestos medicine, neither Dr. Anderson's report nor testimony provide any factual basis for this opinion with regard to Pabst to support his baseless conclusion.

Similarly, Dr. Staggs' report and testimony are even more devoid of factual or scientific support. Dr. Staggs' report does little more than relay a single paragraph description of Plaintiff's alleged work history, briefly describe portions of the Decedent's radiology and pathology records, and then opines, without basis, that the Decedent's occupational exposure to asbestos was a significant contributing factor in the development of Decedent's illness. Dkt. No. 73. In his deposition, Dr. Staggs candidly acknowledged he had no information sufficient to attribute any asbestos exposure to any specific defendant, product, or premises location. *See* Exhibit 2 at pp.

6

17-18.  Further, Dr. Staggs testified he had no knowledge as to any dose of asbestos to which the Decedent may have been exposed, nor any knowledge of what type of asbestos fibers the Decedent may have encountered.  *Id.*, at pp. 34-35; 42.  The inadequacy of the information Dr. Staggs' considered is apparent, particularly considering that his sole source of information regarding the Decedent's work history (and alleged asbestos exposure) was a single page "Work History Exposure Summary" authored by Plaintiff's counsel.  *Id.*, at pp. 16-17.  Akin to Dr. Anderson's opinions, Dr. Staggs' entire opinion is that any exposure to asbestos, or that each and every "exposure above background," is a significant contributor to the causation of any asbestos-related disease.  *Id.*, at p. 27; 38-39.  Further, similar to Dr. Anderson, Dr. Staggs' report provides no support or basis for this opinion.

On its face, Dr. Brody's report does not appear to offer an explicit causation opinion.  Dkt. No. 68.  However, as part and parcel of Dr. Brody's report, he essentially offers a cumulative exposure theory in reverse, noting that no asbestos fibers can ever "be excluded as an agent in causing mesothelioma or any of the asbestos-related diseases," without the benefit of any attribution to any facts or data relevant to this individual and specific matter.  Dkt. No. 68.  Thus, the crux of Dr. Brody's opinion is identical to that of Drs. Anderson and Staggs, that any exposure to asbestos, regardless of the dearth of information regarding from where it allegedly emanated, and is sufficient to attribute causation.

Neither Dr. Anderson's, Dr. Brody's nor Dr. Staggs' reports or deposition testimony in this matter contain any facts such as epidemiological data, rates of disease in relevant populations, data used to compare disease rates in different cohorts, or any other factual information or data to support their extraordinary conclusions.

7

### III. The Inadmissible Opinions and Testimony of Drs. Anderson, Brody and Staggs are Not the Product of Reliable Principles and Methods.

In determining the "reliability" of a scientific method or principle, a court examines numerous factors stated above under *Daubert*. *See Daubert*, 509 U.S. at 593-94. In pertinent part, *Daubert* sets forth factors such as (1) testability of the expert's hypothesis, (2) whether the technique has general acceptance in the scientific community, and (3) whether the methodology has ever been subject to peer review and publication. "Any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3rd Cir. 1994). The court "must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." *In re TMI Litig.*, 193 F.3d 613, 665-66 (3rd Cir. 1999).

### A. The Opinions Are Not Testable.

Both Dr. Anderson and Dr. Staggs opine that "cumulative" exposures to asbestos are the cause of the Decedent's alleged asbestos-related disease. Dkt Nos. 67 and 73. And while Dr. Brody appears to offer no specific causation opinion related to this matter, it is clear that his report and anticipated testimony fall along the identical lines in opining that no source of asbestos can ever be excluded. Dkt. No. 68. Both Drs. Anderson and Staggs candidly acknowledge that they have no knowledge as to (1) what Decedent's alleged asbestos exposures were, (2) where such exposures occurred, (3) how much exposure (if any) Decedent had, nor (4) the asbestos fiber type to which Decedent was exposed. *See* Exhibit 1 at pp. 47-48; Exhibit 2 at 16-17; 34-35. Similarly, Dr. Brody's report makes clear he too possess no information or evidence specific to this matter. Dkt. No. 68.

Despite this stunning lack of even rudimentary information, both Drs. Anderson and Staggs have no difficulty in concluding that Decedent's "cumulative" exposures to asbestos above

8

background were a contributing factor to the development his mesothelioma, a dose-responsive disease.   Dkt Nos. 67 and 73.   This untenable hypothesis is not testable based on simple practicalities.  For instance, as Dr. Staggs testified, every person in the United States is exposed to background levels of asbestos.  *See* Exhibit 2 at pp. 37-39.  Thus, considering that every person is exposed to some level of background asbestos, which forms at a variety of different levels at various places around any city, state or even the country, it would be implausible, or even impossible, to generate an epidemiological study comparing a cohort of non-exposed individuals, to a cohort that was exposed to background levels to see if there is an excess of asbestos-related disease in the later cohort, while also curing for possible confounding variables.   Dr. Staggs acknowledged the fundamental scientific impossibility of such a determination:

> BY MR. SCHUMACHER:
>
> Q.  So just to follow up on that, in your view can mesotheliomas be caused by exposure only to background levels of asbestos?
>
> A.   Not that we know of.
>    **Again, that's a complicated question; and it would be a very difficult thing for epidemiology to detect...**

*See* Exhibit 2 at p. 37.  Simply speaking, the scientific method dictates the use of constants and variables.  In a deposition (from an unrelated matter) accompanying Dr. Brody's report, the same point is made crystal clear; that, in the abstract, without such constants and variables, it is scientifically impossible to determine what alleged source of asbestos is causative of an individual asbestos-related disease.  Dkt. No. 68 (Exhibit 2 at p. 50).

Consequently, any opinion that Decedent purportedly inhaled some level of asbestos at Pabst greater than zero, and more than background (the level of which is unknown), and that this inhalation is a contributing factor to the development of the Decedent's disease, is not a testable

scientific method or theory as one cannot measure airborne concentrations that are less than zero or an unknowable background level.

**B.      The Opinions do not Flow from Recognized Methodology.**

With respect to the purported "methodology" used by Drs. Anderson, Brody and Staggs in concluding that all exposures above "background" contributed to a causative "cumulative" exposure, no recognized or discernable methodology exists, particularly in light of the internal inconsistencies in the testimony of all three experts.  First, Dr. Anderson acknowledged that some exposures do not play a causal role, such as a "single, brief exposure to asbestos."  *See* Exhibit 1 at p. 59.  In a nearly identical fashion, Dr. Brody, in the unrelated deposition attached to his expert report, also noted that a single fiber, or exposure to background levels of asbestos, do not cause disease.   Dkt. No. 68 (Exhibit 2 at pp. 50; 79).   Finally, Dr. Staggs refused to testify that background exposures alone, despite the vast differences that can occur in background exposures, are causally connected to the development of asbestos-related diseases.  *See* Exhibit 2 at p. 37-38. Yet, in contradiction, each expert goes on to state that each, every, or any exposure, even if less than background levels, contributes to the Decedent's "cumulative" exposure.  *See* Exhibit 1 at pp. 59-60; Dkt. No. 68 (Exhibit 2 at p. 79-80; 82), Exhibit 2 at pp. 26-27.  To complete this scientific conundrum, each expert then goes on to opine that although background exposures do not contribute, exposures above zero combine to create enough exposure to create a cumulative exposure, where each individual exposure contributes to that cumulative total and is thereby causative of the alleged disease.[3]  Neither Dr. Anderson's, Dr. Brody's nor Dr. Staggs' reports nor testimony in the case provide any insight into the methodology used to come to this circular and

---

[3] Although none of these individual exposures are known, or according to Drs. Anderson and Staggs, needed for the formulation of their opinions, each expert acknowledges that mesothelioma is a dose-responsive disease.

10

unsupportable opinion. As set forth above, statistics, and namely epidemiology, provide no methodology, much less recognized methodology, to support such an opinion.

### C. The Methodology and Opinions have not been Subject to Peer Review and are Not Generally Accepted.

There is no basis to claim that the unknown, untestable and unsupportable methodologies underpinning Dr. Anderson's, Dr. Brody's and Dr. Staggs' opinions have been subject to peer review, or are generally accepted. Dr. Staggs attempts to explain away the lack of rigorous review by asserting that his "cumulative" exposure theory is "essentially identical to what's been called the 'scientific method...,'" while failing to acknowledge, as demonstrated above, that such opinions are wholly untestable and unsupported in this case by fact or evidence in the record.[4] *See* Exhibit 2 at p. 30. Functionally, the methodology utilized by Drs. Anderson, Brody and Staggs will always support only one conclusion, that exposures to asbestos of any fiber type or in any concentration in excess of background rates cause or contribute to cause disease, while exposures at or below background do not cause or contribute to cause disease. Plaintiff, as the purveyor and proponent of this theory is required to establish the reliability of Dr. Anderson's, Dr. Brody's and Dr. Staggs' method of establishing causation.

In this regard, Dr. Anderson's, Dr. Brody's and Dr. Staggs' opinions are like that in *In re TMI Litig.*, 193 F.3d 613 (3rd Cir. 1999), where the expert did not possess actual exposure data, but instead assumed exposure levels based on little more than pure conjecture. The court excluded this testimony based upon Rule 702's "helpfulness" or "fit" prong, which "requires valid scientific connection to the pertinent injury as a precondition to admissibility." *Id.*, at 674. While Plaintiff

---

[4] Merriam-Webster defines the "Scientific Method" as:

> principles and procedures for the systematic pursuit of knowledge involving recognition and formulation of a problem, the collection of data through observation and experiment, and the formulation and testing of hypothesis

11

will undoubtedly argue that there are no preclusions on providing assumptions under *Daubert*, "the supporting assumption must be sufficiently grounded in sound methodology, and reasoning to allow the conclusion it supports to clear the reliability hurdle." *Sachs v. Reef Aquaria Design, Inc.*, 2007 WL 3223336 (N.D. Ill. 2007) *citing to In re TMI Litig.*, 193 F.3d at 677.

None of the other factors used to evaluate the reliability of expert opinions support Dr. Anderson's, Dr. Brody's or Dr. Staggs' opinions in this case. Plaintiff has identified no standards that control the technique that any of these experts use to generate his opinions. Plaintiff has presented no information that any of these witnesses has accounted for any known or potential error rate in his methodology or opinions. Since none of these experts has based any opinion specific to Pabst on any actual information in this case, there is no relationship between the methodology used, if any, that has been suggested elsewhere as being reliable, such as an appropriately performed and scientifically valid retrospective airborne concentration analysis, which would be based upon actual facts of record and an expert's personal knowledge and analysis of these facts. In this respect, neither Dr. Anderson's, Dr. Brody's, nor Dr. Staggs' opinions with respect to Pabst reliably answer the question that will be posed to the jury, *i.e.*, whether the Decedent actually inhaled asbestos fibers at Pabst at a rate *that is known to cause or contribute to disease*, and that this inhalation was in fact a proximate cause, or contributed to, the development of the disease at issue. Plaintiff's experts provide nothing more than a theoretical assumption that the Decedent inhaled asbestos fibers, of an unknown type, at a concentration greater than zero or greater than an unknown background level – and that such a theoretical exposure cannot be excluded as a potential cause of disease.

**III.** **The Inadmissible Opinions and Testimony Will Fail to Assist, and Will Actually Confuse, the Trier of Fact.**

    **A.** **The "Every Exposure" or "Cumulative Exposure" Theory Incorrectly and Impermissibly Conflates Risk with Causation.**

The "each and every," or "every exposure," or "single fiber," or "cumulative exposure" theory addresses risk, not causation. The question in this litigation, however, is not whether the Decedent's alleged exposure to asbestos attributable to any product or premises increased his risk of injury. Rather, Plaintiff must demonstrate that the Decedent's exposure to asbestos from any individual product or premises was a "substantial factor" in causing the Decedent's injury. *Sumnicht v. Toyota Motor Sales*, 121 Wis. 2d 338, 351; 360 N.W.2d 2 (1984).

Thus, Drs. Anderson, Brody and Staggs stretch the "cumulative exposure" theory beyond its risk based foundations and rely on it to opine that every asbestos-containing product to which Decedent was exposed, and thus every premises where such an asbestos-containing product was allegedly present, contributed to cause the Decedent's injury. The mere fact that exposure to a toxin may increase the risk of injury is not proof that exposure to the toxin caused an injury. *See* Reference Manual on Scientific Evidence 552, 609 (3d ed. 2011) (explaining that "an association is not equivalent to causation," and that epidemiological studies do not address specific causation).

    **B.** **The "Every Exposure" or "Cumulative Exposure" Theory Ignores Every Consideration of Dose.**

Drs. Anderson, Brody and Staggs "everything contributes" theory does not comport with the most fundamental principle of the science of toxicology – the dose makes the poison. *See* Reference Manual on Scientific Evidence 636 (3d ed. 2011). In other words, disease or injury results only when exposures to a substance reach a level that overwhelms the body's defenses, called a "threshold" point. Ibuprofen, alcohol, water and sunlight, or even known "poisons" such as arsenic, are only poisonous if the dose is high enough to overwhelm these defenses – and are

otherwise harmless or even beneficial (in the cases of sunlight and water) at lower doses. *See* David L. Eaton, *Scientific Judgment and Toxic Torts—A Primer in Toxicology for Judges and Lawyers*, 12 J.L. & Pol'y 5, 11 (2003) ("All substances are poisonous—there is none which is not; the dose differentiates a poison from a remedy" (quoting Paracelsus, the "father of toxicology")).

The "cumulative exposure" theory ignores the unassailable principles of dose. Instead, it simply asserts that all exposures to asbestos are contributory to the causation of any asbestos-related disease. By ignoring the concept of dose, the "cumulative exposure" theory reduces the analysis to a mere exposure test. Thus, no matter what exposure is input into this "model," the result will always be the same: the alleged exposure to asbestos will always be a substantial and contributing factor. This theory is pure advocacy – not science. The wholesale failure to consider dose is contrary to the decisions of courts nationwide that have acknowledged the primacy of dose, the need to develop a dose estimate to support a toxic tort case, and the complete rejection of the expert advocacy of Drs. Anderson, Brody and Staggs.

Most recently, the U.S. Court of Appeals for the Seventh Circuit reviewed a decision of the Northern District of Illinois involving a *Daubert* challenge to several experts offering an identical "cumulative exposure" theory in an asbestos-related matter. *See Krik v. Exxon Mobil Corp.*, No. 15-3112, – F.3d – (7th Cir. 2017), 2017 WL 3768933 (Aug. 31, 2017). In upholding the District Court's rejection of the proffered "cumulative exposure" theory, the Court correctly reasoned that no matter how Plaintiff packages or labels the theory, it is identical to the universally rejected "each and every exposure" or "single fiber" theory:

> To summarize, the principle behind the 'each and every exposure' theory and the cumulative exposure theory is the same – that it is impossible to determine which particular exposure to carcinogens, if any, caused an illness. In other words, just like 'each and every exposure,' the cumulative exposure theory does not rely upon any

14

> particular dose or exposure to asbestos, but rather all exposures
> contribute to a cumulative dose.

*Id.,* 2017 WL 3768933 at *5. The Court went on further to note that the "cumulative exposure"

theory requires "a defendant to exclude a potential cause of the illness" and thereby "improperly

shifts the burden to the defendants to disprove causation and nullifies the requirements of the

'substantial factor' test. *Id.* In quoting with approval the U.S. Court of Appeals for the Ninth

Circuit, the *Krik* Court notes:

> such a theory of liability would render the substantial-factor test
> essentially meaningless. Allowing causation to be established
> through testimony like [the expert's] would 'permit imposition of
> liability on the manufacturer of any [asbestos-containing] product
> with which a worker had the briefest of encounters on a single
> occasion.' This is precisely the sort of unbounded liability that the
> substantial factor test was developed to limit.

*Id.*, at *6, quoting *McIndoe v. Huntington Ingalls, Inc.*, 817 F.3d 1170, 1177 (9th Cir. 2016). *See*

*also Lindstrom v. A–C Prod. Liab. Tr.*, 424 F.3d 488, 493 (6th Cir. 2005) ("The requirement,

however, is that the plaintiff make a showing with respect to *each* defendant that the defendant's

product was a substantial factor in plaintiff's injury .... A holding to the contrary would permit

imposition of liability on the manufacturer of any product with which a worker had the briefest of

encounters on a single occasion."). As the *Krik* Court notes, numerous federal and state courts

throughout the country have rejected the "cumulative exposure" theory espoused by Plaintiff's

experts.[5] *Id.*, at *6, *see e.g. Haskins v. 3M Co.*, No. 2:15-CV-02086-DCN, 2017 WL 3118017

(D.S.C. July 21, 2017) (Plaintiff expert's "logic quickly devolves ... and leads to the bizarre

conclusions that <u>any</u> exposure that carries <u>any</u> chance of causing mesothelioma – however

miniscule – constitutes a 'substantial cause'" and must be excluded) (emphasis in original);

---

[5] Dr. Brody in particular, as noted below, has been excluded and/or criticized numerous times by state and federal courts for his various iterations of "each and every" or "cumulative" exposure opinions.

*Rockman v. Union Carbide Corp.*, No. CV RDB-16-1169, 2017 WL 3022969 (D. Md. July 17, 2017) (The cumulative exposure, or "each and every exposure theory" ... "is not the 'product of reliable principles and methods,' as required by Rule 702(c) of the Federal Rules of Evidence, nor does it enjoy 'general acceptance' within the 'relevant scientific community.")[6]; *Yates v. Ford Motor Co.*, 113 F.Supp.3d 841, 846-848 (E.D.N.C. 2015) (The "above background" or "each and every" exposure theory is an "amorphous" and not scientifically valid theory)[7]; *Sclafani v. Air and Liquid Sys. Corp.*, Nos. 12-CV-3013; 12-CV-3037, 2013 WL 2477077, at *5 (C.D. Cal. May 9, 2013) (Excluding Dr. Brody's "every exposure" opinion as unreliable pursuant to *Daubert*.); *Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 353 (Tex. 2014) ("[P]roof of 'any exposure' to a defendants product" is insufficient to establish medical causation.)[8]; *Betz v. Pneumo Abex, LLC*, No. 38 WAP 2010, 2012 WL 1860853, at *23 (Pa. May 23, 2012) (finding that the expert's "*any exposure opinion is in irreconcilable conflict with itself*" (emphasis added)); *accord Dixon v. Ford Motor Co.*, No. 546, 2012 WL 2483315, at *7 (Md. Ct. Spec. App. June 29, 2012) (the opinion that each and every exposure is "'substantial' "simply [is] not a scientific conclusion"); *Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 226-27 (Pa. 2007) ("[W]e do not believe that it is a viable solution to indulge in a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact issue concerning substantial-factor causation"); *Borg-Warner Corp. v. Flores*, 232 S.W.2d 765, 771-72 (Tex. 2007) ("absent any evidence of dose,

---

[6] The *Rockman* Court specifically rejected Dr. Brody's "underlying theory that 'each and every' exposure to asbestos 'cumulates' and should therefore be considered a cause of injury." *Rockman*, 2017 WL 3022969, at *1

[7] In the context of its ruling rejecting the "above background" or "each and every" exposure theory, the *Yates* Court specifically rejected and excluded Dr. Brody's substantially similar opinion that no exposures can be excluded as a causative agent in the development of a Plaintiff's asbestos-related cancer. *Yates*, 113 F. Supp.3d at 848.

[8] Though not a *Daubert* ruling, the Texas Supreme Court heavily criticized Dr. Brody's overall "each and every" or "cumulative exposure" approach, discussed its scientific invalidity, and explicitly ruled that it did not and could not establish specific causation. *Bostic*, 439 S.W.3d at 353; 357.

16

the jury could not evaluate the quantity of respirable asbestos to which Flores might have been exposed or whether those amounts were sufficient to cause asbestosis"); *In re W.R. Grace & Co.*, 355 B.R. 462, 476 (Bankr. D. Del. 2006) (the "'no threshold' model ... flies in the face of the toxicological law of dose-response, that is, 'that the dose makes the poison . . . .'")[9]; *In re Toxic Substance Cases*, No. A.D. 03-319, 2006 WL 2404008, at *6-7 (Pa. Com. Pl. Aug. 17, 2006); *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603, 611 (N.D. Ohio 2004) (concluding the "any exposure" theory is "not supported by the medical literature"), *aff'd sub nom. Lindstrom*, 424 F.3d 488.

## C. The Inadmissible Opinions and Testimony Would Not be Helpful to the Jury.

To be admissible, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The issue in this case is whether the Decedent's injury was caused by asbestos exposures related to his work history and to whom such exposures can be attributed, if any. Because Drs. Anderson, Brody and Staggs assume any and all asbestos exposures above zero are contributory and sufficient to cause disease, they inhibit the fact finder from deciding the essential issues. Essentially, this lack of differentiation or "in for a penny,

---

[9] In the context of its ruling rejecting the "every exposure" or "cumulative exposure" theory, the *In re W.R. Grace & Co.* Court, specifically rejected Plaintiff's expert Dr. Henry Anderson's nearly identical opinion, stating:

> Dr. Henry Anderson, based his opinion that ZAI caused two individuals to contract mesothelioma on the court opinion in Mr. Harashe's personal injury lawsuit and the court transcript and some medical records of Mr. Liebsch. Because his evaluation was so limited, Dr. Anderson was unaware of significant alternate exposure pathways. Dr. Anderson had no information regarding Mr. Harashe's exposure to asbestos through his job as a maintenance worker for a public school district. Dr. Anderson also assumed that Mr. Liebsch had no occupational exposure to asbestos. However, Mr. Liebsch worked in a boiler room of a hospital and family members testified that he came home from work covered with white dust and that he told his wife to wash his clothing separately. Because Dr. Anderson's opinion was rendered without regard to all relevant facts, it is deficient, thereby calling into question even the marginal utility the case studies may have possessed concerning causation. ***Thus, use of the individual case studies was not sound methodology, the assumptions made were not scientifically or factually valid, and Dr. Anderson's analysis is unreliable. Dr. Anderson's opinion, therefore, does not satisfy Daubert and its progeny and is not admissible. We exclude this evidence.***

*In re W.R. Grace & Co.*, 355 B.R. at 481-82.

17

in for a pound" opinion will not assist the trier of fact in attributing liability, which is why so many courts have rejected it. In doing so, such courts have fulfilled their incumbent "gatekeeper" role in denying the admission of unreliable testimony.

**CONCLUSION**

Plaintiff seeks, via the "expert" opinions of Drs. Anderson, Brody and Staggs, to advance advocacy in the place of the scientific method in order to demonstrate specific causation. In so doing, Plaintiff attempts to advance as admissible her expert witnesses' opinions and testimony despite the fact that they are not supported by any cognizable methodology. Plaintiff's theory that "any" exposure to asbestos is a substantial cause of mesothelioma directly contravenes the quantum of proof required by Wisconsin law. In effect, Plaintiff has created a theory of proximate case based on phantom evidence using pseudo-science and innuendo, not supported by any facts, against which there is no possible defense. Plaintiff's ultimate proximate cause theory is simply that all Defendants were the cause of the claimed injury, and that no evidentiary support for this conclusion is needed. For all of the reasons set forth herein, this theory does not pass muster under Federal Rules, and does not comport with Wisconsin's "substantial factor" test.

WHEREFORE, for all of the reasons set forth herein, Pabst Brewing Company respectfully prays that this Court enter an Order excluding the causation opinions and testimony of Henry Anderson, M.D., Arnold Brody, Ph.D. and Brent Staggs, M.D. as set forth in this Motion, and for any other relief that this Honorable Court deems fair and just.

Dated this 21st day of September, 2017.

BY:    /s/ *Joshua C. Schumacher*_____
       Edna L. McLain
       Joshua C. Schumacher
       HEPLERBROOM LLC
       Attorneys for Pabst Brewing Company
       30 N. LaSalle Street
       Suite 2900
       Chicago, Illinois 60602
       Telephone: (312) 230-9100
       Facsimile: (312) 230-9201

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

---

| | | | |
|---|---|---|---|
| **BEVERLY AHNERT, Individually and** | ) | | |
| **as Executrix of the Estate of** | ) | | |
| **DANIEL AHNERT, Deceased,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | **Case Nos.** | **10-cv-156-pp** |
| **v.** | ) | | **13-cv-1456-pp** |
| | ) | | |
| **BRAND INSULATIONS INC.,** *et. al.*, | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

---

## CERTIFICATE OF SERVICE

---

TO:     Michael P. Cascino
        Robert G. McCoy
        Daniel B. Hausman
        Jin Ho Chung
        Cascino Vaughn Law Offices
        220 S. Ashland Avenue
        Chicago, IL 60607

CC:     All Counsel of Record

The undersigned states that in this, the 21st day of September, 2017, Pabst Brewing Company filed its Motion to Bar the Opinions and Testimony of Henry Anderson, M.D., Arnold Brody, Ph.D. and Brent Staggs, M.D. Pursuant to *Daubert* in the above-styled cases. True and correct copies of this document were electronically served upon all counsel by operation of the Court's electronic filing system.

BY:     /s/ *Joshua C. Schumacher*
        Edna L. McLain
        Joshua C. Schumacher
        HEPLERBROOM LLC
        Attorneys for Pabst Brewing Company
        30 N. LaSalle Street
        Suite 2900
        Chicago, Illinois 60602
        Telephone: (312) 230-9100
        Facsimile: (312) 230-9201