**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | | |
|---|---|---|---|
| **BEVERLY AHNERT, Individually and** | ) | | |
| **as Executrix of the Estate of** | ) | | |
| **DANIEL AHNERT, Deceased,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | **Case Nos.** | **10-cv-156-pp** |
| **v.** | ) | | **13-cv-1456-pp** |
| | ) | | |
| **BRAND INSULATIONS INC.,** *et. al*., | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

**DEFENDANT PABST BREWING COMPANY'S**
**MOTION TO BAR THE REPORTS, OPINIONS AND TESTIMONY OF KENNETH**
**GARZA, CIH, PURSUANT TO *DAUBERT* AND ITS MOTION TO BAR UNTIMELY**
**DISCLOSED REPORTS AND MATERIALS**

Comes now Defendant PABST BREWING COMPANY ("Pabst"), by and through its

attorneys, HeplerBroom LLC, and moves this Court for an Order barring the opinions and

testimony of Plaintiff's expert Kenneth Garza, CIH, pursuant to Federal Rules of Evidence 702

and 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and further

moves for an Order barring any untimely disclosed reports and materials reviewed and relied upon

by Kenneth Garza pursuant to Federal Rules of Civil Procedure 16(f) and 37(c). Defendant Pabst

further incorporates its Memorandum of Law in support of these Motions as if fully set forth

herein.

Respectfully submitted,

BY:    */s/ Edna L. McLain*
          Edna L. McLain
          Joshua C. Schumacher
          HEPLERBROOM LLC
          Attorneys for Pabst Brewing Company
          30 N. LaSalle Street
          Suite 2900
          Chicago, Illinois 60602
          Telephone: (312) 230-9100
          Facsimile: (312) 230-9201

2

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

---

| | | | |
|---|---|---|---|
| BEVERLY AHNERT, Individually and | ) | | |
| as Executrix of the Estate of | ) | | |
| DANIEL AHNERT, Deceased, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | **Case Nos.** | **10-cv-156-pp** |
| | ) | | **13-cv-1456-pp** |
| v. | ) | | |
| | ) | | |
| BRAND INSULATIONS INC., *et. al.,* | ) | | |
| | ) | | |
| Defendants. | ) | | |

---

**DEFENDANT PABST BREWING COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO BAR THE REPORTS,
OPINIONS AND TESTIMONY OF KENNETH GARZA, CIH, PURSUANT TO
*DAUBERT* AND ITS MOTION TO BAR UNTIMELY DISCLOSED REPORTS AND
MATERIALS**

---

Defendant PABST BREWING COMPANY ("Pabst"), by and through its attorneys, HeplerBroom LLC, submits the following Memorandum of Law in support of its Motion to Bar the Reports, Opinions and Testimony of Kenneth Garza, CIH, as inadmissible pursuant to Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rules of Civil Procedure 16(f) and 37(c), and states as follows:

<u>**INTRODUCTION**</u>

This is a consolidated personal injury and wrongful death case wherein Plaintiff Beverly Ahnert alleges Pabst and other defendants exposed Daniel Ahnert to asbestos-containing products that led to his development of asbestosis and mesothelioma, leading to his subsequent death. Plaintiff filed the original asbestosis case on February 25, 2010, which was subsequently

transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings. Dkt. No. 3. A few years later, Beverly Ahnert, individually and as the Executrix of Daniel Ahnert's estate, filed a second complaint in the Eastern District of Wisconsin. On August 21, 2014, the asbestosis case (Case No.10-cv-156) was remanded from the U.S. District Court for the Eastern District of Pennsylvania, and the case was subsequently assigned to Judge Pepper on December 29, 2014. The two cases were recently consolidated on March 31, 2017. Dkt. No. 101.

Since the remand of the asbestosis case, no orders have been sought or entered permitting Plaintiff to disclose additional expert reports or opinions. Upon consolidation of the two cases on March 31, 2017, the Court only permitted an extension to complete depositions of experts, treating physicians and Beverly Ahnert by September 1, 2017. Dkt. No. 106.

During the convoluted procedural histories of these cases, Plaintiff never disclosed Kenneth Garza as an expert and simply produced two written reports: a General Asbestos Exposure Report of Kenneth S. Garza and Stephen Kenoyer dated May 1, 2012 and a Case Specific Report dated August 10, 2012 authored by the same individuals. Dkt. No. 71. Subsequent to these 2012 reports, Plaintiff disclosed an Amended General Asbestos Exposure Report dated January 21, 2013, authored by Kenneth Garza and Stephen Kenoyer, which was barred as untimely by U.S. Magistrate Judge David R. Strawbridge of the United States District Court for the Eastern District of Pennsylvania on April 3, 2013. *See* Exhibit 1, Explanation and Order dated 4/3/13. In his order, Judge Strawbridge commented that Plaintiff's failure to timely supplement the report was not "substantially justified" and prejudicial to the defendants, including Pabst who joined in the Motion to Strike.

Despite Judge Strawbridge's rulings over four years ago, Plaintiff's counsel again disclosed not one, but two, new reports from Kenneth Garza and Stephen Kenoyer within days of Kenneth Garza's deposition on August 11, 2017. On August 7, 2017 at 5:13 p.m., Plaintiff's counsel emailed defendants' counsel another General Asbestos Exposure Report dated October 19, 2015. *See* Exhibit 2, Email with attachments dated 8/7/17. Three days later, Plaintiff's counsel disclosed a second additional report and designated a deposition transcript on August 10, 2017 at 4:54 and 4:57 p.m., less than 24 hours before the August 11, 2017 deposition of Kenneth Garza. *See* Exhibit 3, Email with additional report dated 8/10/17 *and* Exhibit 4, Email with deposition transcript. Defendant's counsel immediately objected to the untimely disclosures of these additional materials and Plaintiff's statement that Kenneth Garza would be relying on these materials during his deposition. *See* Exhibit 5, Email from Defendant's counsel dated 8/10/17. Therefore, as set out below in section V of this Motion, the only reports that should be considered are the General Asbestos Exposure Report of Kenneth S. Garza and Stephen Kenoyer dated May 1, 2012 and the Case Specific Report dated August 10, 2012. Dkt. No. 71. All other reports and untimely disclosed materials should be barred.

Pabst raises *Daubert* challenges as to the causation opinions of Kenneth Garza since the opinions espoused in his 2012 reports and at his deposition lack reliability on various scientific issues for which the Plaintiff seeks to produce him and are therefore inadmissible as they fail to meet the standards set forth by Federal Rule of Evidence 702.

**ARGUMENT**

I.      **The *Daubert* Standard**

The United States Supreme Court has made it clear that scientific testimony is admissible under Rule 702 only if it is based upon "scientific knowledge" that is "derived by the scientific method":

> Proposed testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). In determining whether such proposed testimony was supported by "good grounds," the Court discussed five factors in the context of expert scientific evidence:

1. Whether the expert's theory can be or has been tested or challenged in some objective sense or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;

2. Whether the theory has been subject to peer review and publication;

3. The known or potential rate of error of the theory when applied;

4. The existence and maintenance of standards and controls; and

5. Whether the theory has been generally accepted in the scientific community.

The *Daubert* Court held that expert testimony, on the issue of whether the drug Bendectin caused birth defects, was inadmissible because it was not sufficiently based on epidemiological evidence. In so doing, the Court recognized that the proponent of the testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n. 10. On remand from the Supreme Court, the Ninth Circuit in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995), further confirmed the need for

4

evaluating the foundation of an expert's testimony. The Court explained that testimony of an expert's qualification, conclusions and assurances of reliability is not enough to satisfy the threshold of reliability. When scrutinizing scientific knowledge, the court cautioned, "the expert's bald assurance of validity is not enough." *Id.*, at 1316.

> Yet something doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that these conclusions were 'derived by the scientific method' be deemed conclusive ...
>
> * * *
>
> Our task, then, is to analyze not what the experts say, but what basis they have for saying it.

*Daubert*, 43 F.3d at 1315-16. "Similarly, Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014).

As the proponent of Kenneth Garza's testimony, Plaintiff bears the burden of establishing such admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 requires that an expert witness be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify as to his opinion if "(1) the testimony is based upon sufficient facts or data (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Fed. R. Evid.* 702.

Thus, in considering expert testimony, the trial court must consider "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017). Courts throughout the country have recognized

that this heightened scrutiny of expert testimony is appropriate and necessary because expert testimony can be "both powerful and quite misleading because of the difficulty in evaluating it." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999). *See also Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (Expert witnesses have the potential to "be both powerful and quite misleading."). Thus, District Courts operate a vital "gatekeeping" role in ensuring that only helpful, legitimate expert testimony reaches the jury." *Brown*, 765 F.3d at 772, *citing Daubert*, 509 U.S. at 597. As the Supreme Court noted, expert testimony must "connote more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

## II.     Kenneth Garza's disclosed opinions and testimony are not <u>based upon sufficient facts or data.</u>

Rule 702 expressly requires that expert testimony be "based upon sufficient facts or data." Fed. R. Evid. 702. Experts must reach their conclusions through the use of sufficient data and "talking off the cuff is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

In this case, Kenneth Garza did not rely upon sufficient facts or data in order to formulate any opinions about Pabst at all as demonstrated by the General Asbestos Exposure Report dated May 1, 2012 and the Case Specific Report dated August 10, 2012. Kenneth Garza's opinions in this case are generic in nature, and not specific to Pabst. In fact, neither report mentions Pabst. The reports do not even note Pabst is a location where Daniel Ahnert worked, let alone that it was a source of asbestos exposure.

The only information Mr. Garza received about Pabst came in the form of a list of job sites attached to a letter from Plaintiff's counsel dated August 3, 2012. This list identified eleven alleged job sites, one of which was Pabst in Milwaukee, Wisconsin. *See* Exhibit 6, 8/3/12 Transmittal Letter *and* Exhibit 7, Dep. Trans. Kenneth Garza, p. 63:1-20. Neither the letter nor the list

6

identifies when Daniel Ahnert worked at Pabst, what he did there, where he worked at the facility, or what materials Daniel Ahnert worked with. *See* Exhibit 6. The only testimony Mr. Garza reviewed came from witnesses named John Burns, Charles Lewitzke and John Shorougian, and none of them identified Pabst. *See* Exhibit 7, pp. 70:16-25-71:1-9. This is the entirety of the facts and data Plaintiff's counsel provided to Kenneth Garza about Pabst.

In Kenneth Garza's Case Specific Report, his opinions were directed to occupational exposures at facilities other than Pabst. In fact, Pabst is not listed in the Work History, Occupational Exposure, or any other sections of the report. Dkt. No. 71. Therefore, as of the time the General Asbestos Exposure Report dated May 1, 2012 and the Case Specific Report dated August 10, 2012 were disclosed in this matter, Kenneth Garza had no opinions about Pabst at all.

Further, Kenneth Garza has no opinions about dose as he has no data or facts to rely upon. Asbestos-related diseases are dose responsive, but Kenneth Garza ignores the principles of dose. He made no effort to assess the extent of the Decedent's exposure to any particular product or premises. He made no attempt to estimate Decedent's exposure dose at any job site, let alone if the Decedent even had any exposure to asbestos from or at a Pabst facility. *See* Exhibit 7, p. 55:10-20. Mr. Garza only looked at literature, wrote down ranges of potential exposure reported in literature, and concluded all of Daniel Ahnert's exposures were above background levels. However, he could not cite to any specific literature on which he relied to obtain the ranges of exposure he wrote down, acknowledging, "That would be very difficult…" *See* Exhibit 7, p. 56:1-13. He further acknowledged that "[n]o person ever goes on to a site and is exposed to the same exact amount of something over time. There's a lot of factors go into that." *See* Exhibit 7, pp. 56:22-25-57:1-2. Specifically, Mr. Garza identified factors like type of "product, it could be wind movement or air direction. It could be what's actually being done with the product, if you're doing

7

it or someone else is doing it." *Id.* Yet, Kenneth Garza admitted he had no information as to Pabst at all, let alone what products Daniel Ahnert worked with or around, what wind or air movement patterns were at Pabst, or what was being done with any products at Pabst. *See* Exhibit 7, p. 65:8-15. Accordingly, Kenneth Garza lacks sufficient facts or data upon which to base any opinion as to Pabst.

### III. Kenneth Garza's disclosed opinions and testimony are not the <u>product of reliable principles and methods.</u>

In determining the "reliability" of a scientific method or principle, a court examines numerous factors stated above under *Daubert*. *See Daubert*, 509 U.S. at 593-94. In pertinent part, *Daubert* sets forth factors such as (1) testability of the expert's hypothesis, (2) whether the technique has general acceptance in the scientific community, and (3) whether the methodology has ever been subject to peer review and publication. "Any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3rd Cir. 1994). The court "must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." *In re TMI Litig.*, 193 F.3d 613, 665-66 (3rd Cir. 1999).

#### A. <u>The Opinions Are Not Testable.</u>

Kenneth Garza's opinion, as enunciated in his Case Specific Report, is, assuming Daniel Ahnert worked with or around asbestos containing materials, his exposures "to significant airborne concentrations of asbestos for each type of product" was above background concentration. Dkt. No. 71, Section IV(B-C). However, as Mr. Garza admitted, he has no knowledge as to (1) when Daniel Ahnert worked at Pabst (2) what his alleged asbestos exposures were at Pabst, (2) where such exposures at Pabst occurred, (3) how much exposure (if any) Decedent had, or (4) the fiber type of asbestos to which Decedent was exposed. *See* Exhibit 7, pp. 64:10-25-65:1-15. In fact,

8

the Case Specific Report makes no mention of Pabst at all. Yet despite this stunning lack of even rudimentary information, he had no difficulty concluding at his deposition that Decedent's assumed exposures at Pabst were above background levels and increased his risk for developing an asbestos-related disease.

This untenable hypothesis is not testable based on the simple fact that Kenneth Garza has no data or facts upon which to base the opinion. He has presented nothing as to Pabst that can be tested. Kenneth Garza has nothing to rely upon to even attempt to quantify whether Daniel Ahnert's exposures at Pabst were above background. There simply is no scientifically approved method to test his theory based on the complete lack of information upon which he relied.

### B. The Opinions do not Flow from Recognized Methodology.

The purported "methodology" used by Kenneth Garza in concluding that all exposures above "background" contributed to an increased risk of exposure simply involved reading literature, which Kenneth Garza could not identify, pulling reported exposure ranges from said unidentifiable literature, and summarily concluding Daniel Ahnert was exposed within these reported ranges at every job site. *See* Exhibit 7, pp. 61:1-25-62:1. This conclusion was made despite acknowledging that "[n]o person ever goes on to a site and is exposed to the same exact amount of something over time. There's a lot of factors go into that." *See* Exhibit 7, pp. 56:22-25-57:1-2. The factors he identified include the type of "product, it could be wind movement or air direction. It could be what's actually being done with the product, if you're doing it or someone else is doing it." *Id.* None of which Mr. Garza considered since he had no information about Pabst other than it was identified as a work site in Milwaukee, Wisconsin. There is essentially no methodology whatsoever in how Kenneth Garza comes to his conclusions.

### C. The Methodology and Opinions have not been Subject to Peer Review and are Not Generally Accepted.

There is no basis to claim that the unknown, untestable and unsupportable methodologies underpinning Kenneth Garza's opinions have been subject to peer review, or are generally accepted. Functionally, the methodology utilized by Kenneth Garza will always support only one conclusion, that exposures to asbestos of any fiber type or concentration in excess of background rates cause or contribute to disease, while exposures at or below background do not cause or contribute to disease. He acknowledges that he has never reviewed any asbestos case where he found exposures were at or below background levels. *See* Exhibit 7, p. 74:12-19. Plaintiff, as the purveyor and proponent of this theory is required to establish the reliability of Kenneth Garza's method of establishing causation.

In this regard, Kenneth Garza's opinions are like that in *In re TMI Litig.*, 193 F.3d 613 (3rd Cir. 1999), where the expert did not possess actual exposure data, but instead assumed exposure levels based on little more than pure conjecture. The court excluded this testimony based upon Rule 702's "helpfulness" or "fit" prong, which "requires valid scientific connection to the pertinent injury as a precondition to admissibility." *Id.*, at 674. While Plaintiff will undoubtedly argue that there are no preclusions on providing assumptions under *Daubert*, "the supporting assumption must be sufficiently grounded in sound methodology, and reasoning to allow the conclusion it supports to clear the reliability hurdle." *Sachs v. Reef Aquaria Design, Inc.*, 2007 WL 3223336 (N.D. Ill. 2007) *citing to In re TMI Litig.*, 193 F.3d at 677.

None of the other factors used to evaluate the reliability of expert opinions support Kenneth Garza's opinions in this case. Plaintiff has identified no standards that control the technique that her expert uses to generate his opinions. Plaintiff has presented no information that the witness has accounted for any known or potential error rate in his methodology or opinions. Since the expert has not based any opinion specific to Pabst on any actual information in this case, there is

no relationship between his methodology that has been suggested elsewhere as being reliable, such as an appropriately performed and scientifically valid retrospective airborne concentration analysis, which would be based upon actual facts of record and an expert's personal knowledge and analysis of these facts. In this respect, Kenneth Garza's opinions with respect to Pabst do not fit the question that will be posed to the jury, *i.e.*, whether the Decedent actually inhaled asbestos fibers at Pabst at a rate *that is known to cause or contribute to disease*, and that this inhalation was in fact a proximate cause, or contributed to, the development of the disease at issue. Plaintiff's expert provides nothing more than a theoretical assumption that the Decedent inhaled asbestos fibers, of an unknown type, at a concentration greater than zero or greater than an unknown background level – and that such a theoretical exposure increased his risk of disease.

## IV. Kenneth Garza's opinions and testimony will fail to assist, and will actually confuse, the trier of fact.

To be admissible, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The question in this litigation is not whether the Decedent's alleged exposure to asbestos attributable to any product or premises increased his risk of injury. Rather, the question is whether the Decedent's exposure to asbestos from a Pabst premises or from products it manufactured or used was a "substantial factor" in causing the Decedent's injury. *Krik v. Exxon Mobil Corp.*, No. 15-3112, – F.3d – (7th Cir. 2017), 2017 WL 3768933 (Aug. 31, 2017). The mere fact that a toxin may increase the risk of injury is not proof that the toxin caused an injury. *See* Reference Manual on Scientific Evidence 552, 609 (3d ed. 2011) (explaining that "an association is not equivalent to causation," and that epidemiological studies do not address specific causation).

All Plaintiff can hope to demonstrate with Kenneth Garza's opinions is that any exposure above background levels increased his risk of developing an asbestos-related disease, but Kenneth

Garza cannot and will not testify that a particular exposure **caused** Decedent to develop and asbestos-related disease. He is not a medical causation witness. *See* Exhibit 7, p. 16:18-20. He cannot demonstrate that Decedent was, in fact, exposed to any asbestos-containing materials at Pabst at levels above background at all as he has no facts or data to rely on in formulating such opinions. He cannot demonstrate that any exposures at Pabst increased Decedent's risk of an asbestos-related disease. Therefore, his baseless opinions that do not provide any information as to causation will not assist the trier of fact in evaluating liability and should be barred.

V.     **Plaintiff's late disclosures of new reports and materials is not substantially justified or harmless and should be barred.**

Finally, Plaintiff's counsel, realizing that Kenneth Garza had no data or facts upon which to give opinions about Pabst, attempted to cure this deficiency at the last possible moment by disclosing two additional reports and to designate deposition testimony from a completely different matter prior to Kenneth Garza's deposition. As mentioned above, on August 7, 2017 at 5:13 p.m., Plaintiff's counsel emailed defendants' counsel an additional General Asbestos Exposure Report dated October 19, 2015. *See* Exhibit 2. Three days later on August 10, 2017, characterizing it as an "update", Plaintiff's counsel disclosed a third additional report at 4:54 p.m. and then at 4:57 p.m. designated a deposition transcript of Kenneth Garza from a different matter pending in state court to be used in this case. *See* Exhibits 3-4. This final report and purported deposition designation occurred less than 24 hours before the August 11, 2017 deposition of Kenneth Garza.

Plaintiff's counsel did not seek leave of court, nor could he have provided good cause to do so, to produce these two additional reports and a deposition transcript within days and hours of his own expert's deposition when nearly five years had elapsed since the original reports were disclosed. While Plaintiff may attempt to label this untimely and improper disclosure as a

12

"supplement" under Fed. R. Civ. P. 26(e)(2), the Court should strike both reports and deposition transcript pursuant to Fed. R. Civ. P. 16(f) and 37(c).

Unfortunately, such late disclosures are not a random occurrence in this case. As discussed above, Plaintiff's counsel previously attempted to provide an "amended" report authored by Kenneth Garza and Stephen Kenoyer on January 24, 2013. However, U.S. Magistrate Judge David R. Strawbridge of the United States District Court for the Eastern District of Pennsylvania barred the amended report as untimely in a written Explanation and Order dated April 3, 2013. *See* Exhibit 1. In his order, Judge Strawbridge commented that Plaintiff's failure to timely supplement the report was not "substantially justified" and was prejudicial to the defendants, including Pabst who joined in the Motion to Strike.

Here, Plaintiff's counsel disclosed two additional reports within the same week, one of which was produced only hours before the deposition of his expert. Further, Plaintiff designated, less than 24 hours before Kenneth Garza's deposition, Kenneth Garza's deposition transcript from a state court case entitled *Brezonick v. A.W. Chesterton, et. al., Milwaukee County Circuit Court No. 12-CV-0131189*, which was taken on May 5, 2017. *See* Exhibit 4.

The report produced on August 7, 2017 was entitled General Asbestos Exposure Report and totaled 55 pages. *See* Exhibit 2. The report consisted of 22 substantive pages with the remaining pages containing various materials attached as appendices. Despite being produced on August 7, 2017, the report was dated October 19, 2015, so Plaintiff's counsel apparently had this report in his possession for nearly two years before deciding to disclose it in this matter. Additionally, the report contained ten sections rather than the twenty sections contained within the report from 2012. Notably, the only product type addressed in the 2015 report is electrical switchgears versus the thirteen types of products discussed in the 2012 report. The other report

13

produced on August 10, 2017, less than 24 hours before Kenneth Garza's deposition, was not dated and consisted of 44 substantive pages with no appendices attached. *See* Exhibit 3. The 2017 report addressed four product types versus the thirteen types discussed in the 2012 report. Therefore, there were significant differences between the three versions of the General Asbestos Report produced in this case, which all had to be reviewed and evaluated within hours of the deposition.

Expert reports in this case were previously due on August 13, 2012. If Judge Strawbridge previously barred a report produced five months later dated January 21, 2013 as untimely, it would seem reports produced nearly five years after the court-ordered deadline had passed should also be considered untimely. Further, this case was remanded from the U.S. District Court for the Eastern District of Pennsylvania on August 21, 2014, and no orders had been sought or entered permitting Plaintiff to disclose additional reports or opinions. The only extension permitted was to complete depositions.

While Fed. R. Civ. P. 26(e) permits supplementation of expert reports, litigants must do so "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FRCP 26(e)(1)(A) As Judge Strawbridge further emphasized,

> Rule 26(e) is not an avenue to correct "failures of omission because the expert did an inadequate or incomplete preparation (*Akeva LLC v. Mizuna Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)), to add new opinions (*Beller ex rel. Beller v. U.S.*, 221 F.R.D. 689, 691 (D.N.M. 2003); *Keener v. U.S.*, 181 F.R.D. 639, 640 (D. Mont. 1998)), or "deepen" or "strengthen" existing opinions." *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524, 528 (D.N.M. 2007).

*See* Exhibit 1.

As was the case in 2013 when Plaintiff attempted a similar supplement, these additional reports and the deposition designation are nothing more than an effort to correct an inadequate or

14

incomplete preparation of Kenneth Garza, to add new opinions about Pabst and to "deepen" or "strengthen" opinions he otherwise did not have against Pabst. Without the deposition designation, Kenneth Garza had no information to rely upon to render opinions about Pabst.

According to FRCP 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Receiving two additional reports of varying lengths and topics and a deposition transcript within days and hours of an expert's deposition is not substantially justified or harmless.

Kenneth Garza's deposition was scheduled by Plaintiff's counsel to occur in San Antonio, Texas, on August 11, 2017, and Plaintiff's counsel knew the defendants' attorneys would be traveling for the deposition to appear live. Receiving one of two reports at 4:54 p.m. and the deposition designation at 4:57 p.m. the night before the scheduled deposition caused prejudice to Pabst's ability to prepare for the deposition on August 11, 2017. Prior to reviewing this transcript, Kenneth Garza had no information about Pabst other than it was located in Milwaukee, Wisconsin, and going into the deposition up until 4:57 p.m. the night before, this is what Defendant Pabst was led by Plaintiff's counsel to believe. Kenneth Garza has admitted, "The only information I'm going to have related to Pabst is any of the information that was in the *Brezonick* case and the type of activities that were described there…" *See* Exhibit 7, pp. 63:21-25-64:1-2. In other words, at the time he authored his two reports in 2012 until the untimely disclosure of this deposition transcript the night before the deposition in 2017, Kenneth Garza had no information or opinions specific to Pabst. The situation changed within a span of hours.

In addition to being told by Plaintiff's counsel to review the *Brezonick* transcript, he was told to assume Daniel Ahnert shared similar work sites as John Brezonick. After receiving these

15

instructions on August 10, 2017, Mr. Garza took it upon himself to also review the report he

prepared in the *Brezonick* case. *See* Exhibit 7, p. 9:11-12. Again, this report was not disclosed as

material upon which Mr. Garza would be relying as the basis for any opinions against Pabst. The

first time Defendant's counsel was told he would be relying on the *Brezonick* report was at the

deposition itself, and he further explained,

> Q. Let me clarify something you just said. So you have the Brezonick report on the flash drive we've marked as Exhibit 1?
>
> A. Yes, ma'am.
>
> Q. When was that provided to you?
>
> A. I produced it.
>
> Q. When did that become part of your file in Ahnert?
>
> A. I would have put it in there fairly recently. I don't know. The last couple of days.
>
> Q. Were you asked to produce that report to us today?
>
> A. No. I was -- not to produce it. I was told that Brezonick -- that this gentleman worked at some of the same sites that Mr. Ahnert worked at, so I said okay,well, let me grab that report just in case we need it to talk about it.
>
> Q. And you were told that by plaintiff's counsel?
>
> A. I was told by plaintiff's counsel that Mr. Brezonick worked at some of the locations that Mr. Ahnert worked at, so that's why that's in there.

*See* Exhibit 7, pp. 66:14 to 67:9.

***

> A. Let me explain it this way. My deposition was provided to me from the Brezonick case from plaintiff's counsel. My report was not provided by plaintiff's counsel for the Brezonick case. Of course, I had that because it's in my file. And so I decided to put that in this file just in case we needed to talk about it for some reason or fight about it or whatever.
>
> Q. Sure. And I appreciate that. But my understanding from what you testified earlier was that you were told by plaintiff's counsel that Mr. Ahnert may have

16

shared similar work sites as Mr. Brezonick, and so you pulled your report from Brezonick, and then you were provided your deposition transcript from that case byplaintiff's counsel last evening.

A. Opposite of that. I was provided the deposition, told that hey, by the way, Mr. Ahnert had some similar work sites that they worked at between Brezonick and Ahnert. And that was -- my deposition was provided before that. And then I wanted to go ahead and put the John Brezonick report in our file just in case we needed to talk about it, like we're doing now.

Q. So you probably would have pulled that between last night and this morning?

A. Right.

*See* Exhibit 7, pp. 69:13 to 70:11.

The above testimony highlights this egregiously late disclosure of two new reports, a deposition transcript and a report from another case can only be characterized as Plaintiff's effort to sandbag Pabst with new, previously undisclosed opinions because Plaintiff's counsel realized he had inadequately prepared his expert for the past five years. What makes the situation worse is that the *Brezonick* case was filed on December 6, 2012 and is still pending before the Circuit Court of Milwaukee County. Therefore, Plaintiff's counsel could have easily provided Kenneth Garza information obtained from that case about Pabst **years** before he did so on August 10, 2017, and he could have sought to timely supplement and disclose opinions about Pabst **years** before the August 11, 2017 deposition. Plaintiff's failure to do so is not substantially justified based on the course of conduct described above nor is it harmless to the Defendant Pabst. There is no ability to cure the prejudice caused to Pabst by these late disclosures other than to bar the late reports and to bar reliance on late undisclosed deposition testimony and reports in the *Brezonick* matter from this case.

## <u>CONCLUSION</u>

The *Daubert* reliability factors discussed above illuminates the flaws of Mr. Garza's opinions and support excluding the same. For instance, Mr. Garza cannot explain the methodology that he allegedly relies on in developing his opinions because he has no admissible facts or data about Pabst upon which to rely and formulate any opinions. He has never published a peer-reviewed paper and there is no basis to claim that the methodologies underpinning Mr. Garza's opinions have been subject to peer review, or are generally accepted. Mr. Garza's reliance on insufficient and incomplete information make his opinions nothing more than unsupported speculation. Since Mr. Garza does not pass the reliability hurdle, Mr. Garza's opinions must be stricken and he must be precluded from testifying at trial.

WHEREFORE, for all of the reasons set forth herein, Pabst Brewing Company respectfully prays that this Court enter an Order excluding all opinions and testimony of Kenneth Garza and barring his additional reports and materials untimely disclosed on August 7-11, 2017, as set forth in this Motion, and for any other relief that this Honorable Court deems fair and just.

Dated this 21st day of September, 2017.

Respectfully submitted,

BY:   */s/  Edna L. McLain*
            Edna L. McLain
            Joshua C. Schumacher
            HEPLERBROOM LLC
            Attorneys for Pabst Brewing Company
            30 N. LaSalle Street
            Suite 2900
            Chicago, Illinois 60602
            Telephone: (312) 230-9100
            Facsimile: (312) 230-9201

18

# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | | | |
|---|---|---|---|
| **BEVERLY AHNERT, Individually and** | ) | | |
| **as Executrix of the Estate of** | ) | | |
| **DANIEL AHNERT, Deceased,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | **Case Nos.** | **10-cv-156-pp** |
| **v.** | ) | | **13-cv-1456-pp** |
| | ) | | |
| **BRAND INSULATIONS INC.,** *et. al.,* | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

## CERTIFICATE OF SERVICE

TO:     Michael P. Cascino
        Robert G. McCoy
        Daniel B. Hausman
        Jin Ho Chung
        Cascino Vaughn Law Offices
        220 S. Ashland Avenue
        Chicago, IL 60607

CC:     All Counsel of Record

     The undersigned states that on the 21st day of September 2017, Pabst Brewing Company filed its Motion to Bar the Reports, Opinions and Testimony of Kenneth Garza, CIH, Pursuant to *Daubert* and its Motion to Bar Untimely Disclosed Reports and Materials along with its Memorandum of Law in Support in the above-styled cases.  True and correct copies of this document were electronically served upon all counsel by operation of the Court's electronic filing system.

BY:   */s/ Edna L. McLain*
               Edna L. McLain
               Joshua C. Schumacher
               HEPLERBROOM LLC
               Attorneys for Pabst Brewing Company
               30 N. LaSalle Street
               Suite 2900
               Chicago, Illinois 60602
               Telephone: (312) 230-9100
               Facsimile: (312) 230-9201