UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION


DANIEL AHNERT, ET AL,           )   CASE NO:  2:10-CV-00156-PP
                                )
              Plaintiffs,       )            CIVIL
                                )
      vs.                       )        Milwaukee, Wisconsin
                                )
EMPLOYERS INSURANCE COMPANY     )        Monday, May 15, 2017
OF WAUSAU, ET AL,               )
                                )        (3:01 p.m. to 3:32 p.m.)
              Defendants.       )
_____ )


STATUS / SCHEDULING CONFERENCE

BEFORE THE HONORABLE PAMELA PEPPER,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiffs:          ROBERT G. MC COY, ESQ.
                         Cascino Vaughan Law Offices, Ltd.
                         220 S. Ashland Ave.
                         Chicago, IL 60607

For Defendants:          TRAVIS J. RHOADES, ESQ.
                         Crivello Carlson
                         710 N. Plankinton Ave., Suite 500
                         Milwaukee, WI 53203

                         EDNA L. MC LAIN, ESQ.
                         Hepler Broom
                         30 N. LaSalle St., Suite 2900
                         Chicago, IL 60602

Courtroom Deputy:        Christine Bongel

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 18668
                         Corpus Christi, TX 78480-8668
                         361 949-2988
Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**Milwaukee, Wisconsin; Monday, May 15, 2017; 3:01 p.m.**</u>

<u>**Call to Order**</u>

**THE CLERK:** … time cv-00156 here for a Scheduling Conference.

May I have the appearances, please, starting with the Plaintiff?

**MR. MC COY:** Robert McCoy for the Plaintiff, Judge.

**MS. MC LAIN:** Edna McLain for Papst Brewing Company.

**MR. RHOADES:** Travis Rhoades for Employers Insurance Company of Wausau, Sprinkmann Sons Corporation and Wisconsin Electric Power Company.

**THE COURT:** Good afternoon to everyone. Thank you all. I realize that you-all kind of scrambled after I put the docket remark on the docket about scheduling dates and I appreciate you-all jumping in there and doing that so quickly, especially given the fact that there have been some delays in this case, many of them attributable to me so I appreciate that.

The first order of business that I wanted to take up, though, is just sort of an administrative one, but I wanted to go ahead and get it done, and that is the motion that's on the calendar at Docket Number 102 which is a motion to correct the March 31st, 2017 Order which referred to the wrong -- basically used the wrong terminology for the damages.

Judge Robreno had talked about punitive and

1  compensatory damages, I think, as being reserved back to the

2  MDL Court and for some reason, and I mentioned somewhere in one

3  of my Orders, in my March 31st Order, "punitive and exemplary"

4  damages.  Don't ask me where I pulled that word from, there's

5  no explanation, but of course I'm more than happy to correct

6  that and so I'm granting that Motion to correct that to read

7  "punitive and compensatory damages."

8         Defendants didn't oppose that Motion, and so I'll do

9  that and we'll docket that Order as soon as today's hearing is

10 finished, so thank you.

11        I know that you all probably have noticed that the

12 Sprinkmann Order or the Memorandum in support of the Order is

13 on the docket and today the Wisconsin Electric Memorandum also

14 hit the docket, hoping to get Papst on here in the next couple

15 of days to get you the reasoning and that is where I'll move it

16 if that causes any issues with regard to scheduling so I just

17 wanted to give you a heads up on that in terms of timing.

18        With regard to the schedule that you-all proposed,

19 and I know some of this also is drawn from the MDL Order and

20 probably from Judge Clevert's Order as well, I've gone over

21 that and want to walk through the dates that you've agreed on

22 and some of the dates that you've left open so we can resolve

23 those and get maybe some hearing dates as well.

24        So you proposed September 1st, 2017 for completing

25 depositions of the experts and the treating physicians, as well

1  as Ms. Ahnert and it looks like everyone is in agreement on

2  that date so that is fine.

3          And then a deadline for filing *Daubert* Motions and I

4  know that neither the MDL Court nor Judge Clevert made any

5  specific -- or I didn't make any specific reference to that

6  but, of course, that's understandable that there are going to

7  be such motions in this case.  The deadline you-all have

8  indicated is September 21st, 2017, that's fine.

9          And then responses to those motions October 16th,

10  2017.

11          And replies October 30th, 2017, so those should be

12  something that no one needs any extensions of time on any of

13  those, those should be fully briefed, the *Daubert* motions as of

14  October 30th.

15          You-all suggested in Number 7 of your -- of your

16  Proposed Scheduling Order that there be a hearing on that in

17  November.  I wish I could tell you that I could manage that

18  with the way our calendar is, but it's probably more likely

19  going to be in mid-December, early to mid-December.  But I'm

20  more than happy to look at a date for that and get that

21  (indisc.).

22          Then in addition you-all have proposed October 13th

23  for Motions in limine, the nondispositive trial motions and

24  then responses to that by November 3rd.

25          I think, unless anybody has strong objections, that

1  if there are any issues that come up in those that need to be

2  heard we can do those at the same time as a hearing on the

3  *Daubert* motions unless anybody has an objection to combining

4  that hearing.

5          Okay, so we'll come back to that in just a second and

6  get a hearing date on that.

7          Then you proposed that 21 days prior to whatever date

8  we set for trial to depose any witnesses that are unavailable,

9  that's fine.

10          December 15th you-all had proposed for the -- for the

11  Final Pretrial report.  Let me come back to that in a second.

12          And then December 22nd you had mentioned

13  supplementing any past discovery responses about either setoff

14  or any claims in bankruptcy.

15          And then the Final Pretrial date and a trial date

16  which you-all anticipate will be nine to 10 days.

17          So let's go backward and, first of all, see if we

18  can't get a date for a hearing on the *Daubert* motions and

19  Motions in limine.  So if you want to look at your calendars in

20  December?

21      **(Pause)**

22      **THE COURT:**  Sorry, just give me one moment here.

23      **(Pause)**

24      **THE COURT:**  I am looking at Friday, December the 8th

25  and I can give you morning or afternoon, although I'm guessing

1     people might prefer morning given that it's a Friday.

2          **MR. MC COY:**  I have a question on that hearing,

3     Judge?

4          **THE COURT:**  Sure, Mr. McCoy.

5          **MR. MC COY:**  How your Honor sees that being conducted

6     because the -- and this Scheduling Order is the product of a

7     lot of other remanded MDL cases combined with the -- in fact,

8     we've got the two cases here that we've spent time on.

9          **THE COURT:**  Yeah.

10         **MR. MC COY:**  Fortunately, we actually anticipated

11    your Order, I think, so this was well in the works.

12         **THE COURT:**  Okay.  Thank you for all the work you-all

13    did for that.

14         **MR. MC COY:**  Yeah, otherwise it's a lot of time in

15    Court to figure this out, I'm sure.

16         **THE COURT:**  I'm sure.

17         **MR. MC COY:**  So -- so the question I have on *Daubert*

18    is this, and you know, that's -- do you -- does your Honor

19    believe that there's going to be any live witness testimony, or

20    is that something that is up to the parties on *Daubert*?  'Cause

21    I've had -- I've had it both ways, and it seems like *Daubert*

22    hearings have all of a sudden just become routine in scheduling

23    whereas two years ago they weren't, but I -- I've seen it go

24    both ways depending on the Judge.

25         **THE COURT:**  Yeah.

1    **MR. MC COY:**  And sometimes I believe it's helpful if

2   there is something that's controversial.  I believe in asbestos

3   there's been so many *Daubert* hearings, but I can't say there's

4   been perfectly consistent results so that -- I leave that up to

5   your Honor to give us whatever guidance you want on that, but

6   that obviously affects the length of the hearing itself.

7        **THE COURT:**  Right.  And -- and also you had indicated

8   that they're not always consistent results and some of that is

9   because it's not always the same experts and it depends on the

10  expert and what the expert's report says.

11       **MR. MC COY:**  It's often -- it's often though it is

12  the same expert and -- and it's still not consistent.

13       **THE COURT:**  Well, and you know just because you get a

14  black dress doesn't mean you have to do things the way

15  everybody else who gets a black dress does so I can't --

16       **MR. MC COY:**  Right.

17       **THE COURT:**  -- that I can't -- that I can't -- that

18  problem I can't resolve for you.

19        But generally my thoughts are three-fold on that in

20  the event that this helps:

21        Number 1, I'm not requiring anybody to make any

22  argument on *Daubert*, and if you believe that your pleadings are

23  sufficient and you don't think that any argument is necessary,

24  this is the same boat that I've fallen into before Summary

25  Judgment worked for a long time, I decided Summary Judgment

1    arguments without argument and everybody in the world thought

2    that was horrifying and why aren't you giving people argument?

3         So then I started giving people argument in Summary

4    Judgment and people said "I don't know why you need argument,

5    you have those pleadings, and if we work so hard on them why do

6    we need to show up and argue again?"

7         And in the end I just kind of said "Look, if you want

8    to make an argument I'll hear it; if you don't want to, unless

9    I have something specific that I have a question about that I

10   think argument would resolve I don't see any need for you to

11   make it just to entertain me."

12        So that's Rule Number 1 is that if you-all come to

13   the conclusion after filing your motions that you don't think

14   there's really anything that any of you want to make argument

15   on I'm more than happy not to have you spend that time.

16        Second of all, with regard to whether I anticipate

17   witnesses, as a routine matter I assume that that is something

18   that you-all are going to make a decision about.

19        If the *Daubert* decision comes down to and it seems

20   somewhat unusual to me that it does, a question of the

21   credibility of the expert then I guess you certainly definitely

22   need testimony.  But most *Daubert* motions that I see and I've

23   seen far fewer of them, I'm sure, than you-all have given --

24   given your area of work, that most *Daubert* motions that I see

25   seem to come down to an argument, a legal argument that, you

know, whatever the expert based his or her conclusions on was

not appropriate or, you know, that even if we take as true the

expert's testimony that it doesn't help the trier of fact in

any way, some iteration of an argument of the legal

ramifications of the *Daubert* standard. So in that event I

don't know what witnesses contribute to that and I can't

specifically answer your question, Mr. McCoy, as to this case

only because I don't -- I don't know -- you-all are going to

know much more about who these experts are and what -- what

their reports are going to disclose, so I would say that in

many respects I leave that to you-all.

Now I realize that that causes issues with regard to

scheduling a hearing because if I say, you know, it will take a

half a day or even the whole day on a Friday, and then it turns

out that somebody wants to call seven witnesses that's going to

bollix things up somewhat I would guess in terms of setting

aside a day.

**MR. MC COY:** I wasn't anticipating live testimony in

this case because it's a pretty traditional set of asbestos

exposures for pipefitters in an occupation or the second most

common with mesothelioma or asbestos disease, so I wasn't

anticipating anything on my own, but anyway -- so, I mean, I'm

fine if it's a half a day.

**THE COURT:** Okay. And I don't know if the Defense

has any sense yet of whether or not you'd want to call

1    witnesses or not?

2            **MR. RHOADES:**  Your Honor, this is Travis Rhoades.  I

3    don't -- I don't anticipate calling witnesses.  We're going to

4    depose these folks between now and then so --

5            **THE COURT:**  Right.

6            **MR. RHOADES:**  The only reason that I would think that

7    we would potentially need a live witness is if you had

8    questions that we had forgotten to ask, and then --

9            **THE COURT:**  The likelihood of you-all forgetting to

10   ask questions as opposed to me is pretty well -- Ms. McLain?

11           **MS. MC LAIN:**  We don't anticipate calling any live

12   witnesses at the time of the *Daubert* hearing either, your

13   Honor.

14           **THE COURT:**  So why don't -- why don't we plan it for

15   the morning of the 8th and if it dribbles over a little bit

16   into the afternoon, fine, but if you-all come upon, after

17   you've done the depositions and you've thought this through now

18   that some time has passed, if you think that there's going to

19   be a need for a witness and you think that day is not going to

20   cut it everybody get on the phone to chambers and we can see if

21   we can get it -- a different date.

22           I will tell you that right now I've got trials

23   scheduled for the next two weeks of December, in fact a single

24   trial scheduled for the next two weeks of December.  As you all

25   well know it may or may not go, so -- but that makes the

1  calendar a little tighter.

2          So why don't we say 9:00 a.m. on the 8th of December

3  for that hearing?

4          And if we could also include, if there are any

5  Motions in limine that need argument, again, not requiring

6  anybody to make it if the motions you believe are self-

7  explanatory, fine; but if you believe that there's some

8  argument that's necessary we can do the same, we can deal with

9  those at the same time if that works for folks.

10         In terms of a final Pretrial Conference and a trial

11  date you've got December 22nd for updating your discovery

12  responses.

13         Let me just tell you in terms of a nine to 10 day

14  trial I'm going to probably have to look out some so --

15     **(Pause)**

16     **THE COURT:** I'm sorry, just give me a second, I'm

17  trying to find a hole here.

18     **(Pause)**

19     **THE COURT:** I will tell you that the first place on

20  my calendar right now that I can accommodate a trial of that

21  length is starting the week of May 14th of '18.  That's not to

22  say that we might not have some things fall off, but as of

23  right now that's the first two week chunk that I have clear.

24     **MS. MC LAIN:** Your Honor, my only concern with May

25  14th is I do have a (indisc.) trial in Cook County that starts

1  May 8th and it's because of the number of parties in that case

2  it could spill over into the week of the 14th so I don't know

3  that I would be available at that time.

4         **THE COURT:**  Okay.  Well, the next option would be --

5  because once we get out into that territory I'm relatively

6  clear, excuse me, so we could start it the 21st and go into the

7  next week, the 28th.  I know that doesn't give you a whole lot

8  of breathing room between the two trials.

9         **MS. MC LAIN:**  No, I understand.  I hope we will be

10  done by then.

11         **THE COURT:**  You're stuck in Cook County for two

12  weeks.

13         Mr. McCoy?

14         **MR. MC COY:**  That's fine for Plaintiff.  I mean your

15  earliest date is certainly what we want, (indisc.) mid-80s now.

16         **THE COURT:**  Okay.

17         **MR. RHOADES:**  I have no objection to either date

18  although my calendar doesn't tell me which day is Memorial Day.

19  Is one of those Mondays Memorial Day?

20         **THE COURT:**  That's a good question, isn't it.  Mine

21  doesn't either.

22         **MR. MC COY:**  The last -- last Monday in May.

23         **THE COURT:**  It usually is.

24         **MR. MC COY:**  All right.

25         **MR. RHOADES:**  Stupid electronic calendars --

1          **THE COURT:**  But the jury of Google is that it's the

2     28th so that is when it is.  So, you know, one option is to

3     start on the 21st and then resume the Tuesday of the 29th.

4          Another option is to move out into June, and that

5     depends on whether you-all want an interruption there or

6     whether anybody's going to be traveling.

7          **MS. MC LAIN:**  Personally I would not mind moving it

8     into June just to be on the safe side with my other trial and

9     hopefully with experts coordinating schedules and everything

10    because of Memorial Day.

11         **THE COURT:**  Yeah, that's true.

12         Mr. McCoy, June?  We could do the first week and the

13    second week.

14         **MR. MC COY:**  Whatever is earliest, Judge.  I'm not

15    going to quibble over a month.

16         **THE COURT:**  I know.  Okay.  So what -- should we say

17    the week of June 4th and going into the week of June the 11th?

18         **MS. MC LAIN:**  Sounds good.

19         **THE COURT:**  Okay.  And then for our final Pretrial

20    Conference ahead of that, I know, Ms. McLain, you're in trial

21    the week of the 8th and it may go over into the following week.

22    When does your trial start, the 8th --

23         **MS. MC LAIN:**  It starts on the 8th.

24         **THE COURT:**  Okay.

25         **MS. MC LAIN:**  And with Cook County it may -- that's

1  usually when we get our Judge assignment but we don't

2  necessarily start --

3         **THE COURT:**  Start that day?

4         **MS. MC LAIN:**  -- start that day.

5         **THE COURT:**  Okay.  So the options either are to do it

6  the week before the final Pretrial Conference -- unfortunately

7  I am in Washington the 7th and 8th, so I could do the final

8  Pretrial Conference in the latter days, but then it sounds like

9  you probably are going to be in -- dug in.

10        **MS. MC LAIN:**  It may spill over, yeah.

11        **THE COURT:**  So what about May 3rd, which is the week

12  before your trial starts?

13        **MS. MC LAIN:**  That works fine.

14        **MR. MC COY:**  That's -- that's good, Judge.

15        **THE COURT:**  Okay.

16        **MR. RHOADES:**  No, we've got a Summary Judgment

17  hearing, Bob, in Milwaukee County in the Strong case that

18  morning.

19        **THE COURT:**  Morning?  Could we do it -- I know I have

20  a (indisc.) afternoon, but --

21        **MR. RHOADES:**  It typically takes a few hours, so I

22  would -- maybe afternoon.

23        **THE COURT:**  Yeah, I'm okay with afternoon.  I've got

24  that -- we could even do at like 2:30 -- if you wanted a 2:00

25  o'clock, would that give you enough room?

1          **MR. RHOADES:**  I -- unless the Milwaukee County Judge

2    develops a real keen interest in the case I think so.

3          **MR. MC COY:**  That's Judge DiMotto, right?

4          **MR. RHOADES:**  It is.

5          **THE COURT:**  Well, he could develop a really keen

6    interest in the case.  He's developed many keen interest in

7    many other cases, Judge DiMotto has.

8          **MR. MC COY:**  Right.

9          **THE COURT:**  Well, do you want to --

10          **MR. MC COY:**  Can it be -- can it be the following day

11    or the preceding day?

12          **THE COURT:**  In other words the 2nd or the 4th?

13          **MR. MC COY:**  Right.

14          **THE COURT:**  Yeah, it could be either one of those

15    because right now we're clear out there.  Anybody have a

16    preference?

17          **MR. RHOADES:**  I'm wide open, too, your Honor.

18          **MS. MC LAIN:**  I'm wide open.

19          **THE COURT:**  Okay.  Why don't we do the 2nd?

20          And if the morning works?

21          **MR. MC COY:**  Fine.

22          **THE COURT:**  We could do 9:00 o'clock again?

23          So that's May 2nd.

24          And then let me just -- if it's okay with you-all if

25    I could get back to you on the deadline for your Pretrial

1    report 'cause I think the one that I laid out in my procedures

2    on line it's probably not practical for a case of this nature.

3    I know you all had suggested that date, too, and then I put

4    notes in here to myself that I will fully confess to you now

5    don't make any sense to me.  As I'm reading them I'm not sure

6    what I was thinking, so if I could get back to you-all on the

7    date for the -- for the final Pretrial report?

8            **MR. MC COY:**  That's fine.  That's who you're

9    expecting like 30 days before roughly, something like that?

10           **THE COURT:**  I think it should be -- usually I do

11   seven days before the Final Pretrial Conference or something

12   along those lines, but it -- you know, it may be better to do

13   it sooner than that given the circumstances here and the number

14   of witnesses that may be called.

15           So what else -- I mean, you-all, I know you've put a

16   lot of work into this and you've covered a great deal of

17   territory which I appreciate, so what other things perhaps have

18   you not covered here that you think I ought to be thinking

19   about?

20           **MR. MC COY:**  Not in this Order, Judge, is there's a

21   Motion I believe we -- my firm now filed with Judge Robreno to

22   remand punitive damages from the MDL.

23           **THE COURT:**  Okay.

24           **MR. MC COY:**  So we'll get that ruled on pretty soon.

25   I can't say exactly when, but he usually will rule on that

1   rather quickly because he's had those and other mesothelioma

2   cases before.

3          THE COURT:   Okay.  All right, then we'll just keep

4   an eye open for that.  And I assume I'll get a notice from the

5   MDL Board or the MDL Panel if it gets remanded.

6          MR. MC COY:  Right.

7          THE COURT:  What else?  Ms. McLain, other issues

8   that --

9          MS. MC LAIN:  I don't think so.  I think surprisingly

10  we had a pretty comprehensive conference last week and I think

11  we were able to get through most of the issues that we needed.

12         THE COURT:  Okay.  Okay, good.

13         Mr. Rhoades?

14         MR. RHOADES:  There is one issue, your Honor, and I -

15  - unfortunately I have not done the entirety of the research to

16  even know how to describe the motion, but what we have here is

17  two different cases, as you know, with two different procedural

18  histories.

19         THE COURT:  Yes.

20         MR. RHOADES:  And the discovery taken in both cases

21  is a little bit different with respect to my clients.

22         THE COURT:  Yes.  As you know I'm aware of that from

23  the Summary Judgment rule.

24         MR. RHOADES:  And so I anticipate potentially filing

25  a motion that would ask the Court to enforce the discovery

1  rulings in the earlier case which would exclude some of the

2  testimony taken in the later case.

3       I'm not 100 percent sure that I'm going to file a

4  motion so I -- and I'm not even sure how to characterize it

5  whether it's a Motion in limine or not, so I guess I would

6  anticipate getting through that and -- and letting the Court

7  know within two weeks from today about whether that motion is

8  -- has got sufficient legal authority to even make it worth

9  filing, but I do want to make sure that I look at that issue

10  and argue it if it's available.

11       **THE COURT:**  You know, and I haven't looked at it at

12  all, obviously, because, as you indicated, it's something

13  you're considering and haven't looked into, but -- or haven't

14  looked as fully into it as you would like to, but as you all

15  will recall, 100 years ago when the Plaintiffs first raised the

16  issue of consolidation and I said I didn't want to do that at

17  that point in time because there were Summary Judgment motions

18  that were much further advanced in front of Judge Clevert and

19  we were just in different procedural postures, and I know that

20  I've granted the motion to consolidate because now it seems

21  somewhat ridiculous to consider trying this case separately --

22  these cases separately when we have identical Defendants and

23  the cites are all the same and so forth and so on.  But I would

24  -- I'd be interested in seeing any research that you can

25  produce about differences in the discovery posture, and one of

1  the things we talked about ages ago was the argument that the

2  jury would get confused about evidence that would relate to the

3  2013 case that isn't in the 2010 case or vice versa, and I get

4  that, but I think I expressed a view back then that juries

5  tended to be fairly good at rooting through what they needed to

6  root through, especially if they were given the right

7  instructions and that they were given argument about it.

8          And as you all know, the case spent a lot of time in

9  front of Judge Robreno and it spent a lot of time in front of

10  me, not to mention all of the time that the 2013 case spent in

11  front of Judge Clevert, so I -- given as much water as is under

12  the bridge I would just caution everybody to think hard about

13  that before we head off in that direction.

14          And I know -- I know you were saying you're --

15          **MR. RHOADES:**  Understood.  And it's really one

16  witness, it's Charles Lewitsky (phonetic) --

17          **THE COURT:**  Right.

18          **MR. RHOADES:**  It's the testimony that wasn't taken in

19  the 2010 case that was taken in the 2013 case which expands the

20  case against my clients from just the 1989 period --

21          **THE COURT:**  To the --

22          **MR. RHOADES:**  -- back into the '60s.

23          **THE COURT:**  Right.  Right.  Well, then I'll leave it

24  to you to analyze and just kind of -- I -- I am grateful for

25  all of the work that you-all did to get us to the point today

1   that we're able to get dates on the calendar and just start --

2   to start working in that direction and so I would like to see

3   us continue to make some progress forward if we can.  Okay.

4           **MR. RHOADES:**  If there's no merit I won't bring it,

5   Judge.

6           **THE COURT:**  I know.  I know.  I know.

7           I remember being in front of the Seventh Circuit once

8   and Judge Easterbrook went off on me about a frivolous

9   argument, and I said I hope I've practiced in front of this

10  Court long enough by now to know that -- for you to know that

11  if I thought it was frivolous I wouldn't have brought it, I

12  actually do have some legal basis for it, and he -- he rolled

13  his eyes at me and then said "Move onto your next argument."

14  Okay, well -- I -- I clearly made a good impression with that

15  -- with that argument, so --

16          **MR. MC COY:**  I was just testing you, Judge.

17          **THE COURT:**  Yeah, yeah, I'm sure -- I'm sure that's

18  what it was.  So -- so if there's anything in between now and

19  dates that we've set that you need help on please don't

20  hesitate to call chambers with all parties on the line.  I tend

21  to be less formal than some of the other Judges in terms of,

22  you know, if you need to file a motion file a motion, but if

23  there's simply an issue that you think a half hour talking to

24  me on the phone will resolve, you should call with everybody on

25  the line, I'll try to get on with you if I'm available, and if

1   I'm not my folks will know generally where I am.  If any issues

2   come up in a dep, same deal, give a call.  If I'm not available

3   we'll try to at least figure out if I can get on the phone with

4   you from wherever I am to help resolve that, so don't hesitate

5   to call if you need anything of that nature, okay?

6           Thank you everybody for your work, we'll talk to you

7   soon.

8           **MR. MC COY:**  Thank you.

9           **MR. RHOADES:**  Thank you, your Honor.

10      **(This proceeding was adjourned at 3:32 p.m.)**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          February 7, 2018_


TONI HUDSON, TRANSCRIBER