UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BEVERLY AHNERT,                                    Case Nos. 10-cv-156-pp
Individually and as Executrix                                 13-cv-1456-pp
of the Estate of Daniel Ahnert, Deceased.

                    Plaintiffs,

        v.

EMPLOYERS INS. CO. OF WAUSAU,
SPRINKMANN SONS CORP.,
WISCONSIN ELECTRIC POWER CO.,
PABST BREWING CO.,

                    Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF
<u>DAUBERT</u> RULINGS (DKT. NO. 151)**

---

On January 4, 2018, in a hearing that lasted over four hours, the court

considered and ruled on the parties' motions to exclude experts under <u>Daubert</u>

<u>v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), as well as the

majority of their motions *in limine*, ahead of the trial scheduled for June 4,

2018. Dkt. No. 147. As part of that ruling, the court granted defendant Pabst

Brewing Company's motion to bar, under <u>Daubert</u>, the reports, opinions and

testimony of Kenneth Garza, dkt. no. 118, and granted the <u>Daubert</u> motion of

defendants Sprinkmann, Employers Insurance Company and WEPCO to

exclude Garza's testimony, dkt. no. 122.

On February 20, 2018, the plaintiffs filed a thirty-six page motion, asking

the court to reconsider its orders barring them from using Garza as an expert.

Dkt. No. 151. They attached to that motion thirty-seven exhibits—almost 2,000 pages of documents. Dkt. Nos. 151-1 through 151-37. In spite of the volume of the filing, the plaintiffs have not met their burden to demonstrate that the court should reconsider its January 4, 2018 rulings.

## I.    Background

The parties filed eleven Daubert motions and motions *in limine*; three of the motions *in limine* contained fifty-four separate sub-motions. Dkt. Nos. 125, 126, 127, 129. At the January 4, 2018 hearing, after oral argument, the court granted the defendants' motions to exclude Kenneth Garza's reports, opinions and testimony as an expert. Dkt. Nos. 118, 122. In analyzing Garza's reports under the Daubert standard, the court found that his training and background gave him the knowledge and expertise to qualify as an expert in the area of industrial hygiene. The court concluded, however, that the plaintiffs had not demonstrated that Garza's methods—particularly in relation to the facts of this case—were reliable. The court initially expressed concern that Garza's "general" report contained nothing "that in any way, shape, or form ha[d] any specific connection to this case," dkt. no. 146 at 76; later, it acknowledged that Garza's "specific" report mentioned the WEPCO plant and deposition testimony of some of plaintiff Daniel Ahnert's co-workers, id. at 81. Despite that detail, the court concluded that Garza's proffered opinions lacked sufficient facts or data, and that he had not explained his methodology. Id.

## II.     Plaintiff's Motion for Reconsideration

The plaintiffs ask only that the court reconsider its orders granting the defendants' motions to bar Garza's reports, opinions and testimony. The plaintiffs "do[ ] not seek reconsideration of other rulings made by the court on the record of the argument held on January 4, 2018." Dkt. No. 151 at 2.

The plaintiffs base their motion on (1) "the *Daubert* factors"; (2) Garza's facts, data, and assumptions; (3) Garza's new declaration attached as Exhibit 1 to the motion for reconsideration; (4) 296 pages of testimony from a <u>Daubert</u> hearing (involving Garza) in an unrelated Milwaukee County Circuit Court case; and (5) "the absence of a *Daubert* challenge in the defense motions to certain opinions or report statements of Garza." <u>Id.</u> at 3. Noticeably absent from the plaintiffs' prolix motion is any reference to a rule authorizing the motion to reconsider, or to the standard for reviewing such motions.

### A.     Standards of Review: Motion for Reconsideration

"[T]he Federal Rules of Civil Procedure do not expressly recognize a 'motion to reconsider.'" <u>United States v. Roth</u>, 2010 WL 1541343 at *2 (E.D. Wis., April 10, 2010). There are several rules and standards that allow a court to reconsider a prior order or judgment; which of those rules or standards applies appears to depend on the stage of the case, and the finality of the order or judgment.

Fed. R. Civ. P. 54(b) allows a court to revise, at any time, an "order or other decision . . . that adjudicates fewer than all the . . . rights and liabilities of fewer than all the parties" but "does not end the action as to any of the

claims or parties." Fed. R. Civ. P. 59(e) allows a party to ask a court to alter or amend a judgment. Under Fed. R. Civ. P. 60(b), a party may ask a court for relief from a "final judgment, order, or proceeding" under six specific circumstances. Finally, although the "law of the case" doctrine holds that "a court generally should not reopen issues decided in earlier stages of the same litigation," United States v. Harris, 531 F.3d 507, 513 (7th Cir. 2008) (citing Agostini v. Felton, 521 U.S. 203, 206 (1997)), that doctrine does authorize reconsideration of a previous ruling in the same litigation under certain circumstances.

Perhaps the plaintiffs failed to cite any of the above rules or doctrines because they construed a comment that the court made to one of the plaintiffs' lawyers as an invitation to take a second bite of the apple. In issuing its oral ruling at the January 4, 2018 hearing, the court stated that there was "just simply no link, meaning that there's no discussion either of any of the premises, there's no discussion of any of the specific products, there's no discussion of anything really that particularly directly relates to this case" in Garza's reports. Dkt. No. 146 at 76, lines 16-20. Counsel for the plaintiffs asked to respond to that conclusion, clarifying that "Mr. Garza does cite in his report the testimony about the WEPCO's Oak Creek Powerhouse." Id. at 79, lines 10-11. The court acknowledged that correction, and apologized for the misstatement. Id. at 79, lines 12, 20; 80, lines 20-22, 25; 81, lines 1-3. The court determined, however, that while it had been overbroad in stating that Garza had made no mention of any of the premises, "that still doesn't address

the reliable methodology issue." Id. at 81, lines 15-23. Counsel for the plaintiffs began to argue in response, stating, "Well, I would again—," but the court—having made its decision, and being ready to move on—cut him off, stating, "Mr. McCoy, if you want to file a motion to reconsider, I'd be happy to entertain it." Id. at 81, line 25; 82, line 1.

Counsel for the plaintiffs appears to have taken this statement as an invitation to take a second kick at the cat—a second opportunity to make the arguments that the plaintiffs had made (unsuccessfully) in their written responses to the Daubert and in their oral presentation at the January 4, 2018 hearing. That was not the intent of the court's statement that if counsel wanted to file a motion to reconsider, the court would be happy to entertain it. The court made the statement, in part, to signal that it would hear no further argument on the question of Garza's testimony. It assumed that, if the plaintiffs elected to file a motion to reconsider, they would present it under one of the applicable rules or doctrines governing motions to "reconsider." Because they did not, the court considers each possible option.

1.    *Motion to Alter or Amend Judgment Under Rule 59(e)*

Rule 59(e) allows a party to file a motion asking the court to alter or amend a judgment, as long as the party files that motion "no later than 28 days after the entry of the judgment." The court did not enter a judgment on January 4, 2018, so there is no judgment for the court to alter or amend. Rule 59(e) does not apply.

2.    *Motion for Relief from a Final Order Under Rule 60(b)*

5

Rule 60(b) allows a party to seek relief from an "order" for any of six reasons:

(1)    mistake, inadvertence, surprise or excusable neglect;
(2)    newly-discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4)    the judgment is void;
(5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6)    any other reason that justifies relief.

Rule 60(c) requires a party to file a Rule 60(b) motion "within a reasonable time."

The plaintiffs appear to be asking the court to relieve them of the portion of its January 4, 2018 order that bars Garza's testimony, and they filed the motion within a reasonable time after the court issued that order.

Rule 60(b), however, "is, 'by its terms[,] limited to "final" judgments or orders' and is 'inapplicable to interlocutory orders.'" Phillips v. Sheriff of Cook Cty., 828 F.3d 541, 559 (7th Cir. 2016) (quoting Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 571 (7th Cir. 2006)) (additional citations omitted). See also, Malone v. Securitas Sec. Servs. USA, Inc., 669 F. App'x 788, 790 (7th Cir. 2016) (collecting cases in support of the proposition that a party may not use Rule 60(b) to request reconsideration of an order issued at any time prior to final judgment).

The court's January 4, 2018 order granting the motions to bar Garza's reports, opinions and testimony was not a "final" order. The order "(a) . . . did

6

not dispose of the plaintiff[s'] claims against [the defendants] and (b) . . . did not direct the entry of final judgment [as to any party]." <u>Everett v. Leading Edge Air Foils, LLC</u>, Case No. 14-C-1189, 2017 WL 2894135 at *3 (E.D. Wis., July 7, 2017). Because the orders were "interlocutory," not "final," Rule 60(b) does not apply.

3. *Rule 54(b) Revision of Non-Final Order*

In <u>Galvan v. Norberg,</u> 678 F.3d 581, 587 (7th Cir. 2012), the Seventh Circuit explained that Rule 54(b) allows a court to review non-final orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." <u>See also</u>, <u>Everett</u>, 2017 WL 2894135 at *3 (treating motion to reconsider the grant of a motion to dismiss as a motion to reconsider a non-final order under Rule 54(b)). The court can consider the plaintiffs' motion as a motion to reconsider a non-final order under Rule 54(b).

In reconsidering a non-final order under Rule 54(b), several fellow district courts have concluded that the standard is the same as the standard courts apply in considering a motion to alter or amend a judgment under Rule 59(e). <u>See, *e.g.*</u>, <u>Saccameno v. Ocwen Loan Servicing, LLC</u>, Case No. 15-c-1164, 2018 WL 1240347 at *2 (N.D. Ill. Mar. 9, 2018); <u>Katz-Crank v. Haskett</u>, Case No. 13-cv-00159, 2014 WL 3507298 at *2 (S.D. Ind. July 14, 2014) (citation omitted); <u>Morningware, Inc. v. Hearthware Home Products, Inc.</u>, Case No. 09 c 4348, 2011 WL 1376920 at *2 (N.D. Ill. April 12, 2011); <u>Bilek v. American Home Mortg. Servicing</u>, Case No. 07 c 4147, 2010 WL 3306912 at *1 (N.D. Ill. Aug. 19, 2010); <u>Woods v. Resnick</u>, 725 F.Supp. 2d 809, 827-28 (W.D. Wis. 2010).

These courts have noted that motions to reconsider "are 'viewed with disfavor,' and they are granted 'only in the rarest of circumstances and where there is a compelling reason.'" <u>Saccameno</u>, 2018 WL 124037 at *2 (quoting <u>United States v. Givens</u>, No. 12 CR 421-1, 2016 WL 6892868, at *2 (N.D. Ill. Nov. 23, 2016)). Motions to reconsider under Rule 54(b) "serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." <u>Id.</u> (quoting <u>Hicks v. Midwest Transit, Inc.</u>, 531 F.3d 467, 474 (7th Cir. 2008)). <u>See also</u>, <u>Katz-Crank</u>, 2014 WL 3507298 at *2. "A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" <u>Bilek</u>, 2010 WL 3306912 at *1 (quoting <u>Oto v. Metropolitan Life Ins. Co.</u>, 224 F.3d 601, 606 (7th Cir. 2000)). "Newly discovered evidenc" is evidence "not available at the time of briefing." <u>Katz-Crank</u>, 2014 WL 3507298 at *2 (citation omitted). "[A] motion to reconsider is not an occasion to make new arguments." <u>Id.</u> (citing <u>In re Prince</u>, 85 F.3d 314, 324 (7th Cir. 1996)). "Motions for reconsideration in the district courts are generally disfavored because 'a re-do of a matter that has already received the court's attention is seldom a productive use of taxpayer resources because it places all other matters on hold.'" <u>Id.</u> (quoting <u>Burton v. McCormick</u>, No. 3:11-CV-026, 2011 WL 1792849, at *1 (N.D. Ind. May 11, 2011)). Such a motion 'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to [the decision to be

reconsidered]." <u>Woods</u>, 725 F.Supp. at 828 (quoting <u>United States v. Resnick</u>, 594 F.3d 562, 568 (7th Cir. 2010)).

a.     Newly Discovered Evidence

Despite spending almost forty pages asking the court to reconsider its rulings, the plaintiffs have not argued that any of the thirty-seven exhibits attached to the motion for reconsideration, or any of the three exhibits filed as supplemental authority, are "newly discovered." Rather, after over eight years of litigation and a scant four months before trial, the plaintiffs have filed a bevy of exhibits that are newly *created* or newly produced, but decidedly are not newly *discovered.*

In the "newly created" category, Exhibit 151-1 is a declaration from Garza dated February 19, 2018—over a month *after* the January 4, 2018 hearing. The plaintiffs admit that they filed this February 19, 2018, declaration because the plaintiffs believed that their prior "briefing did not cover all the *Daubert* factors in the depth needed." Dkt. No. 151 at 7. This admission is particularly frustrating. Pabst pointed out in its brief in support of the motion to strike Garza that, during the eight years these cases have been pending, the plaintiffs never have formally disclosed Garza as an expert. Dkt. No. 118 at 4. At some point prior to January 2013, the plaintiffs simply produced two reports from Garza—a "general" report dated May 1, 2012, and a "specific" report dated August 10, 2012. <u>Id.</u> In 2013, while the case was in the Multi-District Litigation court, they produced another "general" report dated January 21, 2013, which was barred by the MDL magistrate judge as untimely. <u>Id.</u> Days before the

9

defendants were scheduled to depose Garza (in August 2017), the plaintiffs produced two more reports. Id. at 5. Garza was deposed on August 11, 2017— he could have used that opportunity to explain all of the information that he provided in the February 2018 declaration. The plaintiffs could have provided that information in their briefs in opposition to the defendants' Daubert motions—they even could have produced Garza at the January 4, 2018 hearing (which the court had designated several times as a "Daubert hearing"), and he could have provided the information there, in person. Instead, the plaintiffs waited until after the court had ruled that they could not use Garza, and *then* had Garza create a new declaration, containing information that they thought would plug the holes the court had identified.

Other exhibits are documents that the plaintiffs knew of at the time of the Daubert briefing and the January 4, 2018 hearing, but that they did not submit or reference at the hearing. Dkt. Nos. 151-2, 151-4, 151-5, 151-6, 151-7, 151-8, 151-13, 151-14, 151-16, 151-18, 151-19. In filing these documents *after* the hearing, the plaintiffs have followed a disturbing pattern that has emerged over the course of the litigation in the consolidated cases—a practice of filing, amending or supplementing pleadings or documents *after* deadlines have expired, one that has contributed to the procedural quagmire of this litigation.

Plaintiff Daniel Ahnert filed the 2010 lawsuit in the Eastern District of Wisconsin, based on his asbestosis diagnosis. Dkt. Nos. 1, 3. After the 2010 case was transferred to the Multi-District Litigation court, a doctor diagnosed

Daniel Ahnert with a cancer known as mesothelioma. Rather than amending the 2010 complaint, the plaintiffs filed a *new* complaint in Milwaukee County Circuit Court, then supplemented their discovery responses in the *federal* case to disclose the new diagnosis. The plaintiffs later dismissed the Milwaukee County Circuit Court case and, on December 30, 2013, filed a *third* case in the Eastern District of Wisconsin, grounded in the mesothelioma diagnosis and naming defendants who had been dismissed from the first case for lack of proof. Case No. 13-cv-1456. When the plaintiffs later attempted to amend the complaint in the MDL (Case No. 10-cv-156), the MDL judge denied that motion as untimely because the parties already had briefed summary judgment. Specifically with regard to Garza, the plaintiffs have attempted to supplement Garza's reports on four different occasions (including the night before his deposition), *not* including this most recent attempt.

None of this is "newly discovered evidence," and all of it could have been provided before January 4, 2018.

The only documents that might arguably constitute newly discovered evidence are Dkt. Nos. 151-21 through 151-23. These are the transcripts of a Daubert hearing that took place on January 17 and 18, 2018 before Judge Glenn Yamahiro in Brezonick v. A.W. Chesteron Co., *et al.*, Case No. 2012-CV-013189 (Milwaukee County Circuit Court). Counsel for the plaintiff produced Garza to testify as a potential expert for the plaintiff in that case. In the motion to reconsider, the plaintiffs argue that Garza's 296 pages of live testimony before Judge Yamahiro "provide[] additional explanation/foundation for

11

admission [of Garza's opinions and testimony in this case] . . . ." Dkt. No. 151 at 7. They argue that the hearing before Judge Yamahiro "was specifically conducted for *Daubert* purposes and was preceded by *Daubert* motion briefing allowing the exact *Daubert* concerns to be addressed in the testimony in court." Id. The plaintiffs assert that this court should consider Garza's testimony before Judge Yamahiro under Fed. R. Evid. 104, which requires courts to decide preliminary questions about whether witnesses are qualified. Id. at 7-8.

It is puzzling, and again frustrating, that the plaintiffs emphasize that the January 17-18, 2018 hearing before Judge Yamahiro was "specifically conducted for *Daubert* purposes." So was the January 4, 2018 hearing before *this* court, but the plaintiffs did not bother to produce Garza for that hearing. They note that the hearing before Judge Yamahiro was preceded by Daubert motion briefing. So was the January 4, 2018 hearing before *this* court. The plaintiffs could have included in their response briefs to the Daubert motions in this court (filed on October 16, 2017) the information they provided to Judge Yamahiro, or could have produced Garza to testify in this case. Instead, they waited until after the court had waded through all of the Daubert briefing here, and after this court had heard extensive argument and issued a ruling barring Garza, to ask this court to use Garza's subsequent testimony in another case to bolster the information they provided this court. This is *not* newly discovered evidence that could not have been uncovered before the January 4, 2018 hearing. It is inefficient for the court, and unfair to the defendants. It is the

kind of waste of taxpayer resources that demonstrates why courts view motions to reconsider with disfavor.

In short, the plaintiffs have not demonstrated that there is newly discovered evidence that warrants this court reconsidering its January 4, 2018 decisions barring Garza from testifying.

### b. Manifest Error of Law or Fact

The plaintiffs have not argued that the court's decision to bar Garza's testimony constituted a "wholesale disregard, misapplication, or failure to recognize controlling precedent." In fact, they have agreed with the court's statement of the relevant factors to consider in deciding whether to admit Garza's testimony. Dkt. No. 151 at 2-3. Rather, they take issue with the court's conclusion that Garza's methodology—reviewing relevant industry literature— was not reliable. They state, "[b]ased on the Court's ruling and comments on January 4, 2018, [the plaintiffs' briefs] did not cover all the *Daubert* factors in the depth needed." Dkt. No. 151 at 7. Nothing in the plaintiffs' hundreds of pages of reconsideration material demonstrates a manifest error of fact or law. At best, the materials show a difference of opinion.

Prior to the January 4, 2018 hearing, the court reviewed Garza's general and specific reports, filed on August 13, 2012 in the 2010 case, as well as his deposition testimony and the parties' briefs and other pleadings in support of, and against, the defendants' Daubert motions. The "methodology" Garza described in the two 2012 reports was to "review the literature." Based on this "methodology," Garza intended to offer the following opinions:

13

- [T]hese products were asbestos-containing or asbestos insulated during the period of Mr. Ahnert's work.

- Significant exposure to asbestos includes the installation, removal, cutting, manipulation, repairing, or in any way disturbing of an asbestos-containing product in such a manner that airborne asbestos fiber concentration is released above background concentration ....

- When the asbestos products were installed, removed, cut, manipulated, repaired or in any way disturbed, Mr. Ahnert, while working with such products or as a bystander, was exposed to significant airborne concentrations of asbestos for each type of product.

  . . .

- We found no evidence of the use of appropriate training, appropriate respiratory protection, or adequate engineering controls. Appropriate training, appropriate respiratory protective equipment, and adequate engineering controls will reduce the exposure to airborne asbestos.

Dkt. Nos. 134-4 at 4; 134-5 at 4.

Neither Garza's reports nor his August 2017 deposition testimony provided any basis for the court (or the defendants) to assess his methodology for reliability. Garza assumed that Daniel Ahnert's exposures were above background concentrations—whatever those were. When he was asked to identify specific literature that he used to obtain the range of exposures that he relied on in his report, he said "that would be very difficult." Dkt. No. 118-7 at 14. Garza testified at his October 2017 deposition that "no person ever goes on to a site and is exposed to the same exact amount of something over time. There's a lot of factors go into that." Id. at 14-15. Yet Garza admitted that he had no information about Pabst other than the fact that it was identified as a

work site; that he had never visited any of the defendants' worksites; that he had never reviewed any air sampling, blueprints, maps or photographs of the sites; and that he did not know the time periods or the distance that Daniel Ahnert worked from any asbestos. He characterized his "general" report as a "review of the industrial hygiene literature as it relates to asbestos"—"kind of a rundown of asbestos information. <u>Id.</u> at 5-6. The court concluded that a "review" or "rundown" of the industry literature was not a reliable methodology for estimating a range of exposure or the impact that range of exposure might have had under Daniel Ahnert's specific circumstances.

Since the court made its decision, the plaintiff has gone to great lengths to rehabilitate Garza's testimony and to support the opinions he intended to provide had the court allowed to testify at the trial in this case. First, they filed the new, February 19, 2018 declaration in which Garza tried to explain his methodology and notes. Dkt. No. 151-1. The court has reviewed that declaration. It does not present the kind of "extraordinary circumstances" that warrant this court reconsidering its decision. The eight-page declaration (accompanied by 201 pages of attachments) refers the court back to the notes to Garza's deposition, and his prior reports. <u>Id.</u> at 1. It explains that Garza got information from co-workers of Ahnert's, and from Ahnert's lawyers, and that he himself has personal experience in sampling and testing for asbestos-containing materials. <u>Id.</u> at 2-3. It reiterates Garza's conclusions from prior reports, and explains that he'd since given "extensive testimony" at the hearing before Judge Yamahiro. <u>Id.</u> It listed again a number of the pieces of literature

Garza had reviewed. <u>Id.</u> at 4-8. It emphasized the reputability of the sources of the literature. <u>Id.</u> at 7. The 201 pages of attachments to the declaration consist of Garza's prior reports, more literature lists, an updated list of the cases in which Garza has testified, and some handwritten notes.

Neither the declaration nor its attachments tread new ground. Rather, it is as if the plaintiffs feel that if they deluge the court with pages and pages and pages of information—even the same information they have presented in the past—the court will submit to information overload and admit Garza's testimony, regardless of whether it finds his methods reliable. This is not a party's attempt to correct a manifest error of fact or law; it is a (verbose) rehashing of information the court already has considered.

The plaintiffs also filed the transcripts of the hearing before Judge Yamahiro, and his decision, in which he referred to the admissibility of Garza's expert testimony "pursuant to Wis. Stat. §907.02" as a "relatively close call." Dkt. No. 153-1 at 15. Judge Yamahiro granted in part and denied in part defendant MillerCoors' motion to exclude Garza's testimony. <u>Id.</u> at 22. He ruled that Garza could not competently testify about medical causation or about MillerCoors, the products used on site or the specific conditions of the MillerCoors premises. <u>Id.</u> at 16, 19. To the extent that Garza intended to offer the same opinion he proffered in this case—that he found "no evidence of engineering controls, appropriate training adequate warnings or appropriate respiratory protection"—Judge Yamahiro concluded that Garza had insufficient facts or data to offer that opinion. <u>Id.</u> at 20.

On the other hand, Judge Yamahiro allowed Garza to testify on the basis of his expertise as an industrial hygienist. He first found—as did this court—that Garza's knowledge, training and experience qualified him as an expert in the area of industrial hygiene. Id. at 16. He then concluded that Garza's testimony was admissible under Wis. Stat. §907.02 "despite the fact that Mr. Garza's specific methodology cannot be found in any peer reviewed articles or publications." Id. at 17. Judge Yamahiro noted that Garza did not perform any testing specific to the case, and acknowledged MillerCoors' argument that Garza had not calculated (and did not know) the potential error rate of his calculation. Id. at 19. Judge Yamahiro added that Garza's testimony did "not grow naturally and directly out of research" that Garza conducted outside of litigation, and that Garza did not visit the workplace or test the specific materials. Id.

Despite these deficiencies, Judge Yamahiro decided to allow Garza to testify to his "opinions within his expertise as an industrial hygienist." Id. at 15. Based on Garza's testimony before Judge Yamahiro, and apparently based on Judge Yamahiro's decision, the plaintiffs argue that this court should reconsider its decision barring Garza's testimony. This court disagrees. Judge Yamahiro and this court came to different conclusions in different cases based on different information. This court made its conclusion in this case based on the admissible information before it, as well as the procedural record of this case. The fact that Garza testified in a different case with different facts in front of a different judge and was allowed to testify as an expert on general issues

17

regarding industrial hygiene does not change this court's conclusions as to the reliability of his methodology (or lack thereof) in this case. Again, this is not a manifest error of law or fact. It is a difference of opinion, perhaps due to the differences in posture and circumstance in the two cases.

c.    Conclusion

The plaintiffs have not provided newly discovered evidence that could not have been provided before the hearing. They have not demonstrated that the court made a manifest error of law. They have not demonstrated that the court made a manifest error of fact. They have expended their resources, the defendants' resources and this court's resources in re-packaging previous submissions and arguments. The court will not change its ruling under Rule 54(b).

4.    *Law of the Case*

In the alternative, the court could construe the plaintiffs' motion to reconsider under the exception to the "law of the case" doctrine. That exception authorizes reconsideration of the court's own prior decision "if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." Santamarina, 466 F.3d at 571-72) (citations omitted). The law of the case doctrine—which "provides that courts should refrain from reopening issues decided in earlier stages of the same litigation," McMasters v. United States, 260 F.3d 814, 818 (7th Cir. 2001)— "does not apply if the court is 'convinced that [the prior decision] is clearly erroneous.'" Id. at 818 (quoting Agostini, 521 U.S. at 236).

18

The plaintiffs have not presented a compelling reason for the court to change its rulings. There has been no change in, or clarification of, the law. While the plaintiffs disagree with this court's view that Garza's methodology, such as it was, was unreliable, they have not argued that the court's decisions were clearly erroneous.

The "reliable methodology" factor is integral to two of the steps in the Daubert gatekeeping process. Once a court has determined that a witness has some scientific knowledge that could assist a trier of fact, Daubert requires that the court next determine whether "the reasoning or methodology underlying the testimony is scientifically valid." Daubert, 509 U.S. at 592-93. If the answer to that question is affirmative, the court next must determine "whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 593. The court concluded, based on the information before it on January 4, 2018, that Garza's methodology was not reliable in terms of its application to the facts in this case. Nothing the plaintiffs have provided convinces the court that that conclusion was clearly erroneous—particularly given that much of what they provided is material the court already has seen or considered.

There is no basis for the court to change its ruling under the exception to the law of the case doctrine.

B.      "Unchallenged" Portions of Garza's Report

The plaintiffs make one other argument in support of the motion to reconsider. They argue that sections 1 to 7 "of the 2013 general report" were

19

not challenged by the defendants in their <u>Daubert</u> motions. Dkt. No. 151 at 9. They assert that because the defendants did not challenge these particular sections, "[t]he ruling striking Garza's unchallenged testimony . . . should be vacated." <u>Id.</u> at 10. At risk of overusing various forms of the word "frustrated," the court finds this argument frustrating, and sees it as another example of the pattern the court has identified.

While the 2010 case was pending before Magistrate Judge Strawbridge in the MDL court, the plaintiffs attempted to file an "amended" general report for Garza, dated January 21, 2013. Dkt. No. 151-1 at 106. In an order dated April 3, 2013, Judge Strawbridge struck the "amended" report. Dkt. No. 118-1 at 1-5. He found that the report was untimely, because it was filed beyond the deadlines set in any of the scheduling orders for any of the MDL cases. <u>Id.</u> at 5.

Almost nine months later, the Ahnert estate and Mrs. Ahnert filed the second federal case, 13-cv-1456. In his June 3, 2014 scheduling order, Judge Clevert ordered the plaintiff to name their expert witnesses by August 15, 2014, and to disclose their reports by September 15, 2014. Case No. 13-cv-1456, Dkt. No. 61. Despite Judge Strawbridge's ruling striking the January 21, 2013 "amended" report in the 2010 case, the plaintiffs filed it, along with the reports of their other proposed experts, in the 2013 case in front of Judge Clevert. <u>Id.</u>, Dkt. No. 71.

Thus, as a result of the plaintiffs having two cases proceeding at the same time in different courts, and in different procedural postures, the plaintiffs were able to succeed in filing the a new Garza report (in their words,

an "amended," or "supplemental," Garza report) despite having blown the deadline for doing so in the 2010 case. Now, they seek to take advantage of that windfall by arguing that the defendants should have challenged specific portions of the "amended" report in their <u>Daubert</u> motions in the consolidated cases.

The court rejects the plaintiffs' arguments that they should be allowed to present certain of the conclusions/opinions Garza stated in the "amended" January 21, 2013 report on the sole basis that the defendants did not specifically challenge those opinions/conclusions. The court will not reconsider its rulings on this basis, nor will it vacate the portion of its rulings that struck Garza's reports and testimony in their entirety.

## III. Conclusion

The court **DENIES** the plaintiff's motion for reconsideration. Dkt. No. 151.

Dated in Milwaukee, Wisconsin this 2nd day of May, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**